**Jo-Ann FARR, Plaintiff,**

v.

**Winston R. CHESNEY et al., Defendants.**

Civ. No. 76–1328.

United States District Court, M. D. Pennsylvania.

Nov. 15, 1977.

As Corrected Jan. 16, 1978.

128

Thomas B. Schmidt, III, Harrisburg, Pa., for plaintiff.

Edward E. Knauss, III, Metzger, Wickersham, Knauss & Erb, James R. Clippinger, Caldwell, Clouser & Kearns, Harrisburg, Pa., A. Lynn Corcelius, Henry, Corcelius, Gates & Gill, Huntingdon, Pa., for defendants.

## OPINION

MUIR, District Judge.

Jo-Ann Farr has brought this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. §§ 2000e et seq., and 28 U.S.C. §§ 1331(a) & 1343 alleging that the Defendants have violated her constitutional rights. The case was tried as to liability before the undersigned judge sitting without a jury from August 15, 1977 to August 17, 1977.

Final arguments of counsel were heard by the Court on August 23, 1977. On September 9, 1977, the Court issued an opinion which stated that the Defendants, Commissioners of Huntingdon, Mifflin, and Juniata Counties, acting as members of the Board of the Juniata Valley Office of Mental Health and Mental Retardation (Juniata Valley Office) violated Farr's right to due process under the Fourteenth Amendment of the United States Constitution by dismissing her from her position as a part-time consultant and sex therapist for that Office without prior notice and a hearing. The Court found, however, that all of the Defendants acted in good faith and were immune from damages in their individual capacities. Therefore, the Court granted counsel for each side an opportunity to request a hearing on the issue of what equitable remedies, if any, Farr might be entitled to for the violation of her due process rights. Counsel elected to proceed by briefing and, after the Court granted extensions of time based upon counsel's representation that settlement negotiations were being conducted, briefs were filed on October 27, 1977.

Farr contends that the most appropriate equitable remedy for the violation of her due process rights would be an award of back pay for the days of work she lost as a result of the Defendants' improper termination of her services on May 17, 1976. Farr argues that such an award should be made against the Defendants in their official capacities to be paid out of local governmental funds and that the Court should award her $4,025.00 in lost income. Defendants respond that an award of back pay would be inappropriate in this situation because the Commonwealth of Pennsylvania, which provided 90% of the funding for the Juniata Valley Office, is protected by the Eleventh Amendment and the three counties, which provided the other 10% of the funding, may not be held liable for such an award because they were not made parties to the suit and to require them to compensate Farr through actions of the Defendants in their official capacities as County Commissioners would violate the spirit of 42 U.S.C. § 1983.

The Court will address these issues *seriatim.*

Before the Court can make a determination of whether Farr has demonstrated an entitlement to an equitable remedy and whether that remedy can properly be imposed upon the Defendants in their official capacities, the Court must determine whether a claim for back pay which is not accompanied by a request for reinstatement is properly an equitable or a legal remedy. In *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, 43 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975) the Court made it clear that back pay against individual Defendants is an award of damages rather than a part of the equitable remedy of reinstatement and that if the individual Defendants were found to be protected from liability because they acted in good faith, then an award of back pay could not be made against them. However, in this case Farr seeks back pay not from the Defendants in their individual capacities but in their capacities as directors of the Juniata Valley Office. In *Harkless v. Sweeney Independent School District*, 427 F.2d 319, 324 (5th Cir. 1970), the Court concluded that back pay was an equitable remedy since it is an integral part of the equitable remedy of injunctive reinstatement. The United States Court of Appeals for the Fourth Circuit, in *Burt v. Board of Trustees of Edgefield County School District*, 521 F.2d 1201 (4th Cir. 1975), stated that back pay even without reinstatement could properly be awarded as an equitable remedy and distinguished such an award from the money damages that would have been awarded to the Plaintiff had the Defendants been found individually liable. Therefore, this Court concludes that Farr's claim for back pay is a request for an equitable remedy even though she has not asked for reinstatement.

Once the existence of an equitable remedy has been established, the Court must decide whether Farr has demonstrated that she is entitled to it. Ordinarily,

where the actions of local officials, even though taken in good faith, violate an employee's constitutional rights under the due process clause, the Court's duty is to attempt to put the complaining party in as good a position as he would have been in had the constitutional violation not occurred. Farr has no adequate remedy at law in a federal court because the Defendants were found to have acted in good faith. Defendants have not contended that Farr's actions preclude her from seeking equitable relief. *See, e. g., Skehan v. Board of Trustees of Bloomsburg State College,* 436 F.Supp. 657 (M.D.Pa.1977). Therefore, Farr has demonstrated an entitlement to the equitable remedy of back pay in the amount of $4,025.00. *See Burt v. Board of Trustees of Edgefield County School District,* 521 F.2d 1201 (4th Cir. 1975). Some courts have indicated that the amount of back pay to be awarded to a person in Farr's position should be reduced by the amount of compensation which they were able to earn as a result of the Defendants' violation of their due process rights. *See, e. g., Harkless v. Sweeney Independent School District,* 427 F.2d 319 (5th Cir. 1970). However, Defendants have not disputed the amount of back pay claimed by Farr and have waived their right to a hearing on the issue. Therefore, the Court will accept $4,025.00 as an accurate statement of the amount of pay to which Farr is entitled.

Even though Farr has established the availability of an equitable remedy and her entitlement to it, the Court's inquiry is not at an end. If the Court lacks jurisdiction over the parties who should be ordered to reimburse Farr, then she may not be awarded back pay in this particular action. The only Defendants named by Farr are seven of the nine Commissioners of Huntingdon, Mifflin and Juniata Counties in both their individual and official capacities. Because the Court has determined that none of the Defendants are individually liable to Farr, an equitable remedy could be imposed upon them only in their official capacities. Therefore, the Court must determine whether an award of back pay against Defendants in their official capacity is precluded by the Eleventh Amendment or by the fact that Farr has established a violation only of 42 U.S.C. § 1983.

In *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974), the Supreme Court held that money which was to be paid from state funds through officials who had been sued in their official capacity representing compensation "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the Defendant . . . officials" is prohibited by the Eleventh Amendment to the United States Constitution. The Court noted that it is the substance of the remedy and not the label placed upon it which controls, stating that *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) did not hold that any form of relief may be awarded against a state official so long as it is "equitable" in nature. *Edelman v. Jordan,* 415 U.S. 651, 666, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). If the essence of an action involves recovery of funds which must be paid from the state treasury, the state is a real party in interest and is entitled to invoke its sovereign immunity. *See Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). *See also Wade v. Mississippi Co-op Extension Service,* 424 F.Supp. 1242, 1256 (N.D.Miss.1976).

In this case, the Defendants have stated that 90% of the funding of the Juniata Valley Office of Mental Health and Mental Retardation was provided by the Commonwealth of Pennsylvania. Apparently 90% of Dr. Farr's compensation which she received from the Office constituted state funds and, were the Court to award her back pay, 90% of that award would come from the state treasury. Therefore, the Court believes that *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) would require that any award of back pay made to Farr be reduced by the amount which would have to come from Commonwealth funds. *See also Skehan v. Board of Trustees of Bloomsburg State College,* 538 F.2d 53, 62 (3d Cir. 1976).

Farr contends, however, that *Edelman* is inapplicable in this situation because the Juniata Valley Office of Mental Health and Mental Retardation or, in the alternative, the three counties which organized the office are local rather than state governmental units and sovereign immunity does not apply to them. *See Edelman v. Jordan*, 415 U.S. at 667 n. 12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). It is clear that if Farr could establish that the office was primarily local in nature because of the counties' control over its activities and funding, then the Eleventh Amendment would not be a bar to an award of back pay against it through the Defendants in their official capacity. The Court of Appeals for the Fifth Circuit in *Campbell v. Gasden County School Board*, 534 F.2d 650, 656 (5th Cir. 1976) has adopted this approach, stating

> our post-*Edelman* cases involving actions for retrospective monetary relief against county school boards and similar entities have held that the Eleventh Amendment does not bar such awards so long as the entities sued are locally controlled, essentially local in character, and the funds to defray the awards would not be derived primarily from the state treasury.

*See also Adams v. Rankin County Board of Education*, 524 F.2d 928, 929 (5th Cir. 1975) (per curiam); *Hander v. San Jacinto Junior College*, 519 F.2d 273 (5th Cir. 1975). In *Hander*, the Court found that a junior college was a local entity and not entitled to sovereign immunity because the statutory scheme for establishing such colleges vested all residual authority with the local Board of Trustees, the Colleges were begun by local initiative, the trustees were locally elected, the college was empowered to sell bonds and levy taxes, and any state appropriations were supplemental to locally raised revenues.

■ The Juniata Valley Office of Mental Health and Mental Retardation was established pursuant to the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, P.L. 96 Art. I, §§ 101 et seq., 50 Pa.Stat.Ann. §§ 4101 *et seq.* The Act allocates certain powers and duties to the state and the county or counties estab-

lishing a mental health or mental retardation office. However, looking at the scheme set forth by the Pennsylvania Legislature as a whole

> "the State, through the Department of Welfare, is responsible for the overall supervision and control of the program to assure the availability of and equitable provision for adequate mental health and mental retardation facilities, and the counties, separately and in concert, are assigned responsibilities as to particular programs."

*Hoolick v. Retreat State Hospital*, 24 Pa. Cmwlth. 218, 222, 354 A.2d 609, 611 (1976). § 4201 of the Act states that the Department of Welfare has the power and duty to make grants, pay subsidies, purchase services and provide reimbursement for mental health and mental retardation services. Therefore, the Court concludes that the Juniata Office of Mental Health and Mental Retardation, although begun by local initiative and run by county and other local officials, is a state-created entity because of the overall power of the state to supervise this activity and the percentage of funding derived from the state treasury. Farr's contentions concerning the local nature of the Juniata Valley Office do not serve to remove it from the shelter of the Eleventh Amendment.

■ Because the Juniata Valley Office is not apparently a legal entity which can sue and be sued, however, the conclusion that it is a state agency may be insufficient to prevent the total award of back pay to Dr. Farr. If the counties provide 10% of the funding through the Juniata Valley Office, and the counties and the Commonwealth of Pennsylvania are the entities which are the monetary forces behind the office's activities, then the Eleventh Amendment might be a bar to only 90% of the amount of back pay. However, the Court is not convinced that a particular agency can be both statewide and local in nature so that only a portion of its activities are protected by the Eleventh Amendment depending on the amount of funding derived from each distinct governmental unit. Therefore, the

Court concludes that the activities of the Defendants in connection with their position as members of the Board of the Juniata Valley Office are sufficiently connected with state activities so that any award of back pay against them in their official capacities as Board members is prevented by the Eleventh Amendment.

Assuming, however, that because the Juniata Valley Office is not a separate legal entity and because the Defendants were sued in their official capacities as commissioners of the respective counties and that the counties' participation in the funding of the Juniata Valley·Office renders them potentially liable to Dr. Farr for an award of back pay, the Court is not convinced that such an award should be made. Farr urges this Court to follow the case of *Incarcerated Men of Allen County Jail v. Fair*, 507 F.2d 281 (6th Cir. 1974), which held that a federal court may award equitable relief against local officials even though it will have a severe impact on local governmental funds without infringing upon 42 U.S.C. § 1983's policy of preventing local governmental agencies from being sued directly under that statute. The Court in *Incarcerated Men* relied upon *Harkless v. Sweeney Independent School District*, 427 F.2d 319, 324 (5th Cir. 1970) which stated that back pay was an integral part of the equitable remedy of injunctive reinstatement and that to impose such a remedy upon a local governmental unit through its officers acting in their official capacity did not offend § 1983. However, the Fifth Circuit's decision in *Harkless* preceded the decision of the United States Supreme Court in *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) which held that neither legal nor equitable relief could be imposed upon a municipality under 42 U.S.C. § 1983. There are strong indications that that portion of *Harkless* relied upon by the Sixth Circuit in *Incarcerated Men of Allen County Jail v. Fair*, 507 F.2d 281 (6th Cir. 1974) is no longer law. In *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976), the Court stated that a claim for back pay could not be maintained under § 1983 against municipal officers where they were being used as "conduits to the city treasury." The Court noted that in *Muzquiz v. City of San Antonio*, 528 F.2d 499 (5th Cir. 1976) it held that based upon *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), and *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), if the real party in interest in a suit for restitution and back pay is a municipal or county governmental unit, then § 1983 may not be used as a vehicle to reach that unit through its officers acting in their official capacities. *See also Campbell v. Gasden County School Board*, 534 F.2d 650, 655 n. 10 (5th Cir. 1976); *Wade v. Mississippi Co-op Extension Service*, 424 F.Supp. 1242, 1253 (N.D.Miss.1976).

It is this Court's view that to award Dr. Farr back pay from the Defendants in their official capacities which would clearly be paid from funds allocated to the Juniata Valley Office by Huntingdon, Mifflin, and Juniata Counties would contravene the policy of 42 U.S.C. § 1983. Congress made it very clear that municipalities, including counties, could not be sued directly under that section, *see Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and to permit disbursements out of county funds through the medium of county officials being held liable under that section would contravene that congressional intent. Just as the Commonwealth may not be held liable because of its sovereign immunity, the County may not be forced to pay because of Congress' desire to exclude it from liability under § 1983. Therefore, as an alternative holding, the Court concludes that the 10% of the funds which would necessarily be used for satisfying an award of back pay to Dr. Farr provided by Huntingdon, Mifflin and Juniata Counties may not be reached under 42 U.S.C. § 1983. The Court is aware that this holding might prevent awards of back pay to many persons in positions similar to Dr. Farr who have established constitutional violations under § 1983 but notes that apparently all Commonwealth employees are subject to a simi-

lar prohibition on back pay awards, see *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53, 62 (3d Cir. 1976), and that nothing in this decision precludes Dr. Farr from instituting suit in a state court for breach of contract or prevents other litigants from attempting to establish an entitlement to such an award under a different statute and in an action directly against the Counties.

Dr. Farr brought this action under 28 U.S.C. §§ 1331 & 1343, the latter of which is the jurisdictional counterpart of 42 U.S.C. § 1983. Therefore, the holding that § 1983 does not provide a means for reaching the county's funds does not end the Court's inquiry. However, it is this Court's view that to allow a Plaintiff such as Dr. Farr to circumvent the Congressional intent behind 42 U.S.C. § 1983 by bringing an almost identical cause of action under § 1331 might not be justified. Although the Court has jurisdiction over Dr. Farr's claims under the Fourteenth Amendment pursuant to 28 U.S.C. § 1331, *see Mahone v. Waddle*, 564 F.2d 1018, at 1022, Nos. 76–1377 & 76–1378 (3d Cir. 1977), the Court has not made a determination of whether Farr has stated a cause of action based independently upon the Fourteenth Amendment. The Court of Appeals in *Mahone* left open the question of whether the Fourteenth Amendment by itself may be a basis for such a cause of action. In addition, because of the policy behind § 1983, it is debatable whether a municipality or local governmental unit such as a county could be reached in such an action assuming that a remedy may be implied. *See Mahone v. Waddle*, 564 F.2d 1018, at 1038–1041, No. 76–1377 & 76–1378 (3d Cir. 1977) (Garth, J., dissenting). The posture of this case, and the claims advanced by both parties, simply do not permit the Court to make a determination of whether Farr has stated a cause of action under the Fourteenth Amendment and 28 U.S.C. § 1331 against the Defendants and that if she has, whether the three counties' funds might be reached through the Defendants acting in their official capacities. Since Farr chose not to join the counties as Defendants in this action, the issue of whether a cause of action could have been stated against them under § 1331 is not before the Court.

The Court concludes that although Dr. Farr has demonstrated an entitlement to the equitable remedy of back pay, because the award would necessarily come from state and county funds, the Eleventh Amendment constitutes a bar to the former and no jurisdiction exists under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 to reach the latter. Consequently, an order will be entered denying Farr's request for equitable remedies.