WILLIAMSPORT SANITARY
AUTHORITY, Plaintiff,

v.

Russell E. TRAIN, Administrator, United
States Environmental Protection
Agency, Defendant.

Civ. A. No. 75–1377.

United States District Court,
M. D. Pennsylvania.

Feb. 6, 1979.

---

Clyde E. Williamson, Charles J. McKelvey, Williamsport, Pa., for plaintiff.

Ann S. Pepperman, Paul M. Kaplow, Pollution Control Section, Land and Natural Resources Div., U. S. Dept. of Justice, Washington, D. C., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for defendant.

## OPINION

HERMAN, District Judge.

Plaintiff, the Williamsport Sanitary Authority ("Authority") is a publicly owned municipal authority which provides sewage treatment for Williamsport, Pennsylvania and the surrounding area. The Defendant is the Administrator of the Environmental Protection Agency and pursuant to 33 U.S.C. § 1281 *et seq.* is charged with the responsibility of administering the construction grant program for sewage treatment facilities under, *inter alia*, the Federal Water Pollution Control Act Amendments of 1972 ("1972 Amendments"), 33 U.S.C. §§ 1251 *et seq.* and 5 U.S.C. §§ 701–706.

Plaintiff's action seeks declaratory, injunctive and mandamus relief under § 206(a) of the 1972 Amendments, 33 U.S.C. § 1286(a), in order to compel the Defendant to perform his alleged obligations under this statutory provision and to prohibit him from paying money owing to the Authority under this statutory provision to other parties, particularly to the Commonwealth of Pennsylvania. Both parties agree that the amount in controversy is $441,350, $198,600 of which was already paid to the Commonwealth of Pennsylvania in May of 1974, and the remaining $242,750 of which has been allotted for but has not yet been paid to the Commonwealth.

Presently before the Court is Defendant's motion for judgment on the pleadings which asserts the following four arguments: (1) That the federal grant program in question involves a great deal of discretionary rather than simply ministerial duties, and therefore mandamus relief should be deemed unavailable to alter an established federal policy; (2) That Plaintiff's request for relief would adjudicate Pennsylvania's right to the funds now in its possession while Pennsylvania is not a party to this action, and therefore any adjudication of this matter would be a deprivation of Pennsylvania's due process rights; (3) That this Court lacks subject matter jurisdiction because in reality Plaintiff's claim is one against the United States for money damages and only the Court of Claims has jurisdiction in such matters; and (4) That the Eleventh Amendment of the United States Constitution precludes suits by the Authority against Pennsylvania in federal court and the Plaintiff should not be permitted to use declaratory, injunctive and mandamus relief against the Defendant to the indirect detriment of Pennsylvania.

Some of the relevant and uncontradicted background information pertaining to this matter is as follows. The Authority's initial facilities were constructed in 1953 at a cost of $5,100,000, which cost was born solely by the Authority. Subsequent to that time the Authority began to upgrade and expand its sewage treatment facilities and in February of 1970 applied for a 30% federal grant for this purpose. This upgrading and expansion project had an eligible cost for funding purposes of $4,012,200. In September of 1970 the Authority was advised by federal officials to apply for a 40% federal grant and a 20% state grant, which the Authority successfully did under 33 U.S.C. § 1158(b) and 32 Pa.C.S.A. §§ 5101 *et seq.* In addition, the Authority also received a 10% planning grant under 33 U.S.C. § 1158(f). Therefore, of the Authority's $4,102,200 of eligible costs it received federal funding in the amount of $1,765,360 and state funding in the amount of $802,440. The Authority bore the remaining $1,444,400 of eligible costs.

At the time the Authority was awarded the 40% federal grant it was aware that other Pennsylvania communities were receiving either 50% or 55% federal funding. An inquiry into this situation revealed that the reason the Authority did not qualify for this more favorable funding was that Pennsylvania had failed to enact required water qualities standards for the waters into

which the Authority's facilities discharge their outflow.

By letter dated November 22, 1972 the Pennsylvania Department of Environmental Resources advised the Authority to apply for a grant under § 206(a) of the 1972 Amendments, and in so doing specifically advised that "you (the Authority) are urged promptly to apply for funding for which your municipality or authority may be eligible". The Authority thus filed an application for the additional § 206(a) funds and the Defendant apparently initially determined that the Authority was entitled to an additional grant of $441,350 pursuant to § 206(a) of the 1972 Amendments, which would place the Authority's total federal funding at 55% of eligible costs. On April 16, 1974, the Defendant took reimbursement action by naming the Authority as "grantee" of $220,700, or approximately one-half of the total $441,350 reimbursement due. However, the Defendant thereafter *changed* its designation of the grantee of the said $220,700 and paid $198,600 of this amount to Pennsylvania so that these funds could be used for the financing of *new* sanitary sewage projects. As noted above, Plaintiff has requested declaratory, injunctive and mandamus relief so that *it* rather than the Commonwealth shall be made the recipient of the full $441,350 federal grant.

In 1972 the federal grant program for sewage projects was extensively amended by the 1972 Amendments, 33 U.S.C. §§ 1251 *et seq.* Pursuant to § 202 thereof, 33 U.S.C. § 1282, all federal grants from funds authorized after June 30, 1971 may total 75% of the projects' eligible costs. Section 206(a) of the Act, 33 U.S.C. § 1286(a), *the controlling statutory provision at issue here*, provides for supplemental grants where construction projects were begun after June 30, 1966, but before July 1, 1972, the effective date of the 1972 Amendments. Section 206(a) provides the following:

"Any *publicly owned treatment works* in a State on which construction was initiated after June 30, 1966, but before July 1, 1972, which was approved by the appropriate State water pollution control agency and which the Administrator finds meets the requirements of Section 8 of this Act in effect at the time of the initiation of construction *shall be reimbursed* a total amount equal to the difference between the amount of Federal financial assistance, if any, received under such Section 8 for such project and 50 per centum of the cost of such project, or 55 per centum of the project cost where the Administrator also determines that such treatment works was constructed in conformity with a comprehensive metropolitan treatment plan as described in Section 8(f) of the Federal Water Pollution Control Act as in effect immediately prior to the date of enactment of the Federal Water Pollution Control Act Amendments of 1972. Nothing in this subsection shall result in any such works receiving Federal grants from all sources in excess of 80 per centum of the cost of such project." (Emphasis added.)

█ Plaintiff's position in this lawsuit is that the above language mandates[1] the Defendant to pay all § 206(a) reimbursements directly to the entity charged with the construction of the "publicly owned treatment works" which were constructed during the pertinent period and not to another party, such as a state. Defendant argues that the term "publicly owned treatment works" does not designate any particular sanitary district, municipality, municipal authority, state or other entity, but rather extends to the Defendant ample discretion to determine to whom such funds should be most equitably and effectively paid. Defendant points to some of the Congressional history behind § 206(a) as support for his proposition. Plaintiff, on the other hand, argues

---

1. Use of the word "shall" connotes a mandatory intent. *Anderson v. Yungkau,* 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1946); See also *Boyden v. Commissioner of Patents,* 142 U.S. App.D.C. 351, 441 F.2d 1041 (1970), where the Court held that use of the word "shall" precluded the Commissioner of Patents in utilizing any discretion in determining whether to permit an indigent to file a patent application without paying the requisite filing fee.

that § 206(a) of the Act is free from ambiguity in mandating the Defendant to reimburse *only* the publicly owned treatment works itself so that *it* receives its maximum share of *federal* funding, and in so arguing correctly notes that any funding granted by Pennsylvania was not done so pursuant to any act which required reimbursement, federal or otherwise.

A determination of the dispute here must be broken down into two parts, one concerning the $242,750 not yet appropriated to either the Authority or Pennsylvania and the other concerning the $198,600 which was already appropriated to Pennsylvania in May of 1974. The approximately $242,750 not yet appropriated to either the Plaintiff or the Commonwealth shall first be addressed.

■ To begin, it is clear that § 206(a) of the 1972 Amendments, 33 U.S.C. § 1286(a), is *not* the ambiguous statutory provision which Defendant portrays it to be. Clearly this provision requires that "[A]ny *publicly owned treatment works . . . shall* be *reimbursed* a total amount equal to the difference between the amount of *Federal* financial assistance, if any, received under such Section 8 for such project and 50 per centum of the cost of such project, or 55 per centum of the project cost where the Administrator also determines that such treatment works was constructed in conformity with a comprehensive metropolitan treatment plan . . . ." This language unambiguously mandates that reimbursement (which means to pay *back*) be made "*to*", and *not* merely on behalf of or on account of, the publicly owned treatment works where *Federal* financial assistance did not total 50% or 55%, whichever applies.[2] No consideration of any state assistance received is authorized by § 206(a).

■ Because § 206(a) is free from ambiguity there is really no need to look behind its language to its legislative history in order to interpret it, as the Defendant urges. *Patagonia Corp. v. Board of Governors of the Federal Reserve System,* 517 F.2d 803 (9th Cir. 1975). However, a view of the legislative history of § 206(a) does not particularly support the Defendant's position. The Senate report on the bill introducing the 1972 Amendments states, *inter alia,* that "Section 206 provides for reimbursement to state, municipalities, intermunicipal agencies, or interstate agencies for projects constructed *by them* for which the full *Federal* contribution to which *they* were entitled was not received." (Emphasis added). Senate Report No. 92–414, U.S. Code Cong. & Admin.News, 1972, pp. 3668, 3698. The Authority and not Pennsylvania constructed the sewage facilities here involved, and the Authority and *not* Pennsylvania was the rightful recipient of the partial federal contributions therefor. The Senate report further states that "[T]he 50% retroactive payment does not alter the right of some *communities,* to receive a retroactive payment of 55% if that project fully qualified for 55% grant prior to the enactment of this Act." Senate Report No. 92–414, U.S.Code Cong. & Admin.News, p. 3700. Furthermore, the Senate bill limited the uses to which the recipient of § 206(a) funds could put such moneys to either the retirement of "a project's indebtedness" or to the financing of "a local share of a new project". Indeed, even the legislative history cited by Defendant reflects that the entity which *constructed* the pertinent sewage facilities is the one entitled to reimbursement funds under § 206(a). Legislative History of the Act, at page 1449. Thus, it is clear from the legislative history of § 206(a), as well as its plain language, that the entity which was actually responsible for the construction of the pertinent sewage facilities, *that being the entity which was originally "short-changed" by an unavailability of full federal funding,* is the entity which is entitled to reimbursement funds pursuant to § 206(a).

---

2. Neither party disputes the fact that Pennsylvania ultimately provided a comprehensive metropolitan treatment plan as described in Section 8(f) of the Federal Water Pollution Control Act as in effect immediately prior to the date of the enactment of the 1972 Amendments, thereby entitling the Authority to a total of 55% of Federal aid rather than just 50% thereof.

■ The clarity of § 206(a) renders untenable the Defendant's argument that he has discretion in determining to whom § 206(a) funds should be paid. Rather, it is clear that he possesses only a ministerial duty to pay such funds to the entity which was charged with the construction of the actual facilities, in this case, the Plaintiff. As a result, the Court must reject the Defendant's suggestion that it should rely upon *E. I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977) because the controlling statutory provision here, § 206(a) is *not* so ambiguous as to be reasonably capable of various constructions on the point of who is entitled to reimbursement funds thereunder.[3] As a result, the Defendant's argument that mandamus does not lie here because that remedy is unavailable for influencing the exercise of proper discretion is deemed without merit. The fact that the Defendant's policy of filtering § 206(a) funds to the states to help finance *new* sewage projects is a worthy one and is a policy which has been followed by the Defendant for some time does not diminish the fact that it is *not* a policy which is proper under the clear language of § 206(a). *March v. United States*, 165 U.S.App.D.C. 267, 506 F.2d 1306 (1974).

■ Defendant's three remaining arguments in support of its motion for judgment on the pleadings must now be addressed. The first of these is that Plaintiff's request for relief "would adjudicate Pennsylvania's right to funds now in its possession although Pennsylvania is not a party to this proceeding". This, of course, is *not* the case in respect to the $242,750 not yet paid by the Defendant to either Plaintiff or Pennsylvania. While Pennsylvania may well view itself as having an interest in this money not yet paid by the Defendant, the language of § 206(a) is clear in demonstrating that Pennsylvania does *not* have any rightful claim to such funds. The Court, therefore, concludes that Pennsylvania is not an indispensable party under F.R.C.P. 19 insofar as these unappropriated funds are concerned. Furthermore, if Pennsylvania deemed its interest in this matter to be significant it had the right to interject itself into this matter. Therefore, Pennsylvania's due process is not significantly involved in respect to the moneys not yet appropriated by the Defendant to either the Authority or to the Commonwealth.

■ However, if the Court were to rule that Pennsylvania is a necessary party in respect to any adjudication concerning unappropriated funds *Plaintiff* would be without a forum to adjudicate its rights to these funds, at least at this time. Pursuant to Federal Rule of Civil Procedure 19(b) one of the factors a court must consider in determining whether to dismiss an action or to adjudicate it where joinder of a desired party is not feasible is "whether the Plaintiff will have an adequate remedy if the action is dismissed for nonjoinder". Here Plaintiff cannot join Pennsylvania because of the United States Constitution's Eleventh Amendment provision which precludes a person of a state from initiating suit against that state in federal court. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Farr v. Chesney*, 441 F.Supp. 127 (M.D.Pa.1977); *Bagby v. Beal*, 455 F.Supp. 881, 1978 (M.D.Pa.1978); *Ruman v. Pennsylvania, et al.*, 462 F.Supp. 1355 (M.D.Pa. 1979). Equitable considerations, therefore, require the Court to entertain Plaintiff's action without Pennsylvania insofar as it concerns the funds not yet paid to Pennsylvania. Furthermore, as noted more fully below, this part of Plaintiff's action, concerning the still unpaid funds, is a purely mandamus action which calls upon the Defendant to properly exercise a ministerial duty under § 206(a).

■ In Defendant's next argument he asserts that the Court lacks subject matter

---

**3.** In the *du Pont* case the Supreme Court reviewed other provisions of the Federal Water Pollution Control Act and held that since they were capable of various interpretations the Secretary's interpretation was "sufficiently reasonable to preclude the Court of Appeals from substituting its judgment for that of the Agency." Here, however, as noted throughout this opinion, § 206(a) is *not* reasonably capable of various constructions on the point in question.

jurisdiction over Plaintiff's claim "against the United States" because exclusive jurisdiction lies in the Court of Claims, and in so arguing he construes Plaintiff's claim as really being one for money damages rather than declaratory, injunctive or mandamus relief as set forth in Plaintiff's complaint. This argument, too, is without merit. Plaintiff has *not* instituted a suit *against the United States*, but rather has instituted this action against the Defendant Administrator of the United States Environmental Protection Agency. This suit essentially requests the Court to direct the Defendant to pay § 206(a) reimbursement money to the Plaintiff Authority rather than to Pennsylvania. 28 U.S.C. § 1361, the jurisdictional basis cited by Plaintiff, specifically provides that "[T]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." Clearly jurisdiction lies under 28 U.S.C. § 1361 and Defendant's argument that subject matter jurisdiction lies only in the Court of Claims is erroneous. *U. S. v. Commonwealth of Pennsylvania*, 394 F.Supp. 261 (M.D.Pa.1975).

■ Defendant lastly argues that Pennsylvania is immune from unconsented suit by its citizens in federal court pursuant to the United States Constitution's Eleventh Amendment, and therefore Plaintiff should not be permitted to obtain declaratory, injunctive or mandamus relief which results in relief being afforded to the Plaintiff which is indirectly detrimental to Pennsylvania. This argument, too, does not withstand reason. Clearly Plaintiff's action is one which questions the *Defendant's* duty to pay Plaintiff money which the Plaintiff claims is owed to it pursuant to the unambiguous language of § 206(a). Insofar as this action pertains to still unpaid funds, it must be viewed as a classic mandamus action, particularly in light of a determination that § 206(a) is *not* an ambiguous statute that authorizes the Defendant to utilize discretion in deciding to whom such funds should be directed. Again, if Pennsylvania desired to interject itself in this matter it has had every opportunity to do so.[4]

Therefore, in respect to the $242,750 not yet paid by the Defendant to either Plaintiff or the Commonwealth pursuant to § 206(a), Defendant's motion for judgment on pleadings is denied.

■ Finally, the matter of $198,600 *already* paid to Pennsylvania by the Defendant must be addressed. Defendant's last three arguments are without merit on this question for the same reasons as they are without merit as they concerned the $242,750 not yet appropriated. However, Defendant's first argument, that an adjudication here without Pennsylvania would deprive Pennsylvania of due process rights, is a most tenable one. Federal Rule of Civil Procedure 19(b) provides, *inter alia*, that "[I]f a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the Court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Among the factors denominated in F.R.C.P. 19(b) as those which the Court must consider in determining whether a party not before the Court is indispensable is "to what extent a judgment rendered in the person's absence might be prejudicial to him" and "whether a judgment rendered in the person's absence will be adequate". Pennsylvania, of course, already has had the money appropriated to it in its possession since May of 1974 and could possibly be hard pressed to repay it to anyone even if effectively so ordered.[5] Therefore, it is quite clear that Pennsylva-

4. The parties have indicated in the documents they have filed that Pennsylvania is well aware of this litigation. Additionally, the Clerk of our Court forwarded a copy of the Magistrate's report in this matter to the Governor, Attorney General and Secretary of Environmental Resources of the Commonwealth.

5. Defendant argues in its brief that Pennsylvania has had funding difficulties in respect to sewage facility projects.

nia's interest in any adjudication involving the $198,600 *already* paid to it is very real, direct and great.

Furthermore, it is quite questionable whether the Court can adjudicate this controversy so as to *effectively* give Plaintiff the relief it seeks in relation to this money, that is the return of the $198,600 which the Defendant has already paid to Pennsylvania. As Plaintiff itself notes in its brief, Pennsylvania would not be bound by any determination here in its absence. Rather, what Plaintiff apparently seeks is an order directing the Defendant to direct Pennsylvania to repay the funds to him so that he can then pay it to the Authority. It is questionable, however, whether the Court has the ability to effectuate even this result in the absence of Pennsylvania's participation in this matter. The Court is cognizant, too, that pursuant to F.R.C.P. 19(b) it should not render an adjudication which would expose the Defendant to multiple liability or multiple litigation so as to require it to pay Plaintiff directly the $198,-600 which it has already paid to Pennsylvania, while Pennsylvania has not yet repaid a like amount. *Provident Tradesman Bank & Trust Company v. Patterson*, 390 U.S. 102, 109–111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Under F.R.C.P. 19(b) the Court also must consider whether the Plaintiff will have an adequate remedy if this action is dismissed for non-joinder of an indispensable party, here the Commonwealth of Pennsylvania. Insofar as the $198,600 already paid to Pennsylvania by the Defendant is concerned, it appears that the Plaintiff has an available remedy at law pursuant to § 761 of the Pennsylvania Judicial Code, 42 Pa.C. S.A. § 761, which places original jurisdiction of all civil actions or proceedings against the Commonwealth of Pennsylvania or any officer thereof acting in his official capacity in the Commonwealth Court of Pennsylvania. Thus, insofar as Plaintiff alleges its right to the $198,600 already appropriated to Pennsylvania by the Defendant, Plaintiff has the opportunity to adjudicate this matter in a different forum. While such litigation in that court may well involve a duplication of efforts, the Court here views Pennsylvania's rights to be so direct and great in this matter concerning the funds already paid to it that it deems it an indispensable party.

In *Schutten v. Shell Oil Company*, 421 F.2d 869 (5th Cir. 1970), the Court set forth some of the reasoning required for any determination of whether to proceed to an adjudication without a party in interest:

"The plaintiff has the right to 'control' his own litigation and to choose his own forum. This 'right' is, however, like all other rights, 'defined' by the rights of others. Thus the Defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations. Likewise, the interests of the outsider who cannot be joined must be considered. Finally, there is the public interest and the interest the court has in seeing that insofar as possible the litigation will be both effective and expeditious."

As noted above, it is quite questionable whether the Court can effectively render an adjudication concerning the money already paid to the Commonwealth. Furthermore, if the Court were to attempt to grant Plaintiff the relief it seeks in respect to the money already so paid to the Commonwealth it may well require the Defendant to engage in further litigation in recovering such money already paid. For these reasons, as well as the others expressed above, Pennsylvania is deemed an indispensable party as far as the sum of $198,600 already paid to it is concerned. Therefore, Defendant's motion for a judgment on the pleadings will be construed as a motion to dismiss for failure to join an indispensible party pursuant to F.R.C.P. 19 concerning the $198,600 already paid to Pennsylvania and the Court will grant this part of Defendant's motion.

Based upon the foregoing the Court will enter an appropriate order which (a) denies Defendant's motion for judgment on the pleadings as far as it pertains to the $242,-750 not yet paid to either the Plaintiff or Pennsylvania and (b) construes Defendant's

motion, so far as it pertains to the $198,600 already paid to Pennsylvania, as a motion to dismiss for failure to join an indispensable party and will grant such motion.