**MUNICIPAL AUTHORITY OF the TOWN OF BLOOMSBURG et al., Plaintiffs,**

**v.**

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL RESOURCES, et al., Defendants.**

Civ. No. 80–0429.

United States District Court, M. D. Pennsylvania.

Aug. 19, 1980.

As Corrected Nov. 3, 1980.

Brett O. Feese, Ann S. Pepperman, McNerney, Page, Vanderlin & Hall, Williamsport, Pa., for plaintiffs.

Michael S. Alushin, Dept. of Environmental Resources, Commonwealth of Pennsylvania, R. J. Woodside, Jack M. Stover, Shearer, Mette & Woodside, Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

Plaintiffs filed this action alleging jurisdiction pursuant to 28 U.S.C. § 1331 seeking declaratory and injunctive relief as well as damages from the Defendants for alleged violations of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251 et seq., and for violations of the Fourteenth Amendment of the Constitution. In addition, pendent jurisdiction is invoked over state law claims. The action is being brought on behalf of a class of municipal authorities who have claims against the Defendants for federal grant funds awarded under § 206(a) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1286(a) (hereinafter § 206(a) money). Section 206(a) money has been paid by the Federal Environmental Protection Agency to the state and the Plaintiffs claim they are entitled to that money. The Defendants, in addition to disputing Plaintiffs' right to the money, filed a motion on May 21, 1980, accompanied by a brief, to dismiss the Plaintiffs' amended complaint on the grounds that the claims of the Plaintiffs are barred by the Eleventh Amendment to the Constitution. Plaintiffs filed a brief in opposition to the motion on June 5, 1980. The Defendants filed a reply brief on June 12, 1980 and the Plaintiffs filed a surrebuttal memorandum on June 27, 1980. For the reasons which follow, the Court will deny the Defendants' motion.

For the purposes of this motion, the Court is obliged to accept as true the allegations in the amended complaint. Insofar as they are relevant to the Eleventh Amendment issue, Plaintiffs allege that the § 206(a) money is held in a restricted revenue account which contains only federal grant funds. The Defendants argue that as a matter of law the placement of the funds in the restricted revenue account is of no significance. They argue that the decision of the Supreme Court of the United States in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) prevents the Plaintiffs from securing an award of funds from the state based on conduct of the State which violated federal law.

Plaintiffs raise numerous objections to the Eleventh Amendment claim of the Defendants. The first is that the Eleventh Amendment does not bar this action because Plaintiffs, as municipal authorities, are not "citizens" as that term is used in the Eleventh Amendment. The Court considered similar argument in the case of *Commonwealth of Pennsylvania v. Williamsport Sanitary Authority*, Civil No. 79–

680 slip op. at 4–5 (M.D.Pa. January 21, 1980), and for the reasons stated therein the Court concludes that in this case as well Plaintiffs' status as municipal authorities does not remove them from the definition of "citizen" in the Eleventh Amendment.

■ Plaintiffs next contend that the Commonwealth has waived its Eleventh Amendment immunity because of its participation in the federal program generating the funds and because of its participation, although not a party, in the case of *Williamsport Sanitary Authority v. Train*, 464 F.Supp. 768 (M.D.Pa.1979). The Court considered similar arguments in *The Commonwealth of Pennsylvania v. Williamsport Sanitary Authority* and for the reasons therein stated at pages 7–9 the Court concludes in this case that the Commonwealth has not waived its Eleventh Amendment protections. Congress in enacting the federal program in question did not abrogate the states' immunity. Pennsylvania's participation in the program and *Williamsport Sanitary Authority v. Train* did not constitute a waiver by "the most express language or by such overwhelming implications . . . as [will] leave no room for any other reasonable construction." *See Edelman v. Jordan*, 415 U.S. 651, 672–74, 94 S.Ct. 1347, 1360–1361, 39 L.Ed.2d 662 (1974).

■ Having disposed of these preliminary objections to the Defendants' Eleventh Amendment claim, the Court must address the scope of the Eleventh Amendment protection enjoyed by the Commonwealth and its officials in this case. The Eleventh Amendment does not bar suits against state officials in their official capacities. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Rather, the Eleventh Amendment only prevents a federal court from awarding certain forms of relief. It bars retrospective relief which takes the form of an order directing the state to pay money "not as a necessary consequence of compliance in the future with a substantive federal question determination, but as a form of compensation . . . measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974). The Eleventh Amendment does not, however, prevent a federal court from ordering state officials to conform their future conduct to the requirements of federal law even if so doing requires the expenditure of substantial amounts of state funds. *Edelman v. Jordan*, 415 U.S. 667–68, 94 S.Ct. 1357–58. The question to be answered in this case, therefore, is whether one or more forms of relief requested by the Plaintiffs necessarily requires the expenditure of state funds as the means of granting retrospective relief.

■ One form of relief the Plaintiffs seek is a declaratory judgment that Plaintiffs are the proper recipients of and entitled to the § 206(a) money; that the Defendants are acting in excess of their authority and in violation of § 206(a), the Pennsylvania Land and Water Conservation and Reclamation Act, and the United States Constitution; and that the Defendants are breaching the terms of the grant and other agreements between the Plaintiffs and the Department of Environmental Resources. This relief, if found to be appropriate, would not be barred by the Eleventh Amendment.

■ A declaratory judgment, unlike an injunction, does not carry any coercive force. In order for the Plaintiffs to compel action consistent with a declaration of rights, they would have to commence an action to seek an order directing that payment of funds be made. If the actual payment of the funds is from the state treasury, such an action may be barred in federal court by the Eleventh Amendment but the Plaintiffs may be able to maintain such an action in the state court. It is also remotely possible that in light of a declaration by this Court of the parties' respective rights, the state legislature might take action resulting in the payment of funds to the Plaintiffs. In neither of these scenarios would a federal court be directing payment of state funds.

Declaratory relief of this kind is less coercive than the injunctive relief approved in *Quern v. Jordan*, 440 U.S. 332, 336, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979), which directed the state to notify public aid recipients in Illinois that past conduct of the state was unlawful and of their rights under state law to seek payment of back benefits. In *Quern*, as would be the case in this action if declaratory relief is granted, the actual payment of money, if it occurs, will depend on future actions by the Plaintiffs, the Defendants and possibly state courts and the legislatures. Consequently, the declaratory relief sought by the Plaintiffs is not barred by the Eleventh Amendment.

■ Plaintiffs request an injunction preventing the Defendants from acting in excess of their authority under certain federal and state laws. An injunction preventing state officials from violating the law in the future or one directing state officials to conform future conduct to the law is not barred by the Eleventh Amendment even if the state is required to expend funds to insure that the future conduct complies with the injunction. *Edelman v. Jordan*, 415 U.S. 651, 667, 668, 94 S.Ct. 1347, 1357, 1358, 39 L.Ed.2d 662 (1974).

■ The Plaintiffs also seek an order directing the Defendants to remit the § 206(a) money to the Plaintiffs and an award of damages in an amount equal to the § 206(a) money allegedly converted by Defendants. For Eleventh Amendment purposes there is no difference between either of these theories. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) teaches that the label attached to the Plaintiffs' theory is of no importance. If the relief requested requires the expenditure of state funds to compensate the Plaintiffs for past actions subsequently found to be unlawful, that relief is barred by the Eleventh Amendment. Plaintiffs' attempt to avoid this result by arguing that the § 206 money is in fact theirs is unavailing.

■ The § 206(a) money was paid by the United States to the Commonwealth of Pennsylvania. While Plaintiffs claim that they rather than the Commonwealth are the rightful recipients of the money, their claim to those funds is no different from the claim made by the Plaintiffs in *Edelman* for welfare payments wrongfully denied because of delays in processing applications. Nonetheless, the Supreme Court held that an order directing payment of the benefits withheld because of the delay in processing was barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. at 669, 94 S.Ct. at 1358. Similarly, the award Plaintiffs seek in this case, if it comes from general state funds would be barred by the Eleventh Amendment.

Plaintiffs argue that the § 206 money in question is not in fact in the state treasury as that term was used by the Supreme Court in *Edelman*. The complaint alleges, and the Court must assume that it is true for the purpose of this motion, that the § 206(a) money is in a restricted account created by the Commonwealth. Plaintiffs argue that the source and segregation of the money remove the bar of the Eleventh Amendment to an order directing that that specific money be paid to the Plaintiffs.

■ The fact that the money originally was paid by the Federal Government is not of great significance. Cases cited by the Plaintiffs such as *Holley v. Lavine*, 605 F.2d 638 (2d Cir. 1979); *Moore v. Tangipahoa Parish School Board*, 594 F.2d 489 (5th Cir. 1979); *Mackey v. Stanton*, 586 F.2d 1126 (7th Cir. 1978), *cert. denied*, 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979), and *Unified School District, No. 480 v. Epperson*, 551 F.2d 254 (10th Cir. 1977), vacated on other grounds, 435 U.S. 948, 98 S.Ct. 1572, 55 L.Ed.2d 797 (1978), are distinguishable because each of those cases involved suits against local entities which attempted to argue that the fact that they received a significant amount of state funds permitted them to assert the bar of the Eleventh Amendment. The Courts in those cases rejected that argument, noting that in each case the Defendants had the ability to generate funds necessary to satisfy the judgments by taxation or otherwise. The Courts concluded that the payment of the

judgments would not necessarily be paid by the state in those cases. In this case, however, there is no question that except for the effect, to be discussed below, of the restricted account the money in question is in the state treasury, having been paid to the state by the federal government.

■ Plaintiffs' argument that the source of the funds and the relationship of the claimant to those funds is of itself controlling is contrary to the decision in *Ford Motor Company v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), which held that the Eleventh Amendment barred an action by a taxpayer to recover taxes paid to the state under protest claiming that the taxing statute was unconstitutional. In *Edelman,* the Supreme Court expressly refused to overrule *Ford Motor Company.* The Court noted that *Ford Motor Company* presented a particularly appealing case for the theory of equitable restitution because the taxpayer in fact owned the money before it was paid to the state. While the source of funds may be important when a Defendant claims the benefit of the Eleventh Amendment, the source of funds is not significant when there is no question that the state will be required to make the payment.

Cases such as *Berry v. Arthur,* 474 F.Supp. 427 (D.S.D.1979) and *Witter v. Pennsylvania National Guard,* 462 F.Supp. 299 (E.D.Pa.1978), also cited by the Plaintiffs, are inapposite. *Berry* involved a suit against a defendant in his individual capacity. The Eleventh Amendment, therefore, was not involved. In *Witter* the District Court found that on the peculiar facts of that case, Congress had by statute abrogated the state's Eleventh Amendment immunity. As indicated above, there has been no congressional removal of Eleventh Amendment protection in this case.

The Plaintiffs' reliance on this Court's decision in *Farr v. Chesney,* 441 F.Supp. 127 (M.D.Pa.1977), is misplaced. In *Farr* the Court was required to determine whether the Juniata Valley Office of Mental Health and Retardation was a state agency for purposes of the Eleventh Amendment. The Court found that 90% of the Juniata Valley Office's funding came from the state. The Court considered and then rejected the idea that an award of back pay could be satisfied out of the 10% of the funding coming from local sources, noting:

> [T]he Court is not convinced that a particular agency can be both statewide and local in nature so that only a portion of its activities [is] protected by the Eleventh Amendment depending upon the amount of funding derived from each distinct governmental unit. Therefore, the Court concludes that the activities of the Defendants in connection with their position as members of the Board of the Juniata Valley Office are sufficiently connected with state activities so that any award of back pay against them in their official capacities as board members is prevented by the Eleventh Amendment.

*Farr v. Chesney,* 441 F.Supp. at 131–32.

The one Court of Appeals decision brought to the Court's attention relating to a segregated fund of money is *Schiff v. Williams,* 519 F.2d 257 (5th Cir. 1975). That case involved an action against the President of a state university who was found to have violated the plaintiffs' first amendment rights by dismissing them as editors of the school newspaper. The district court awarded plaintiffs back pay which was to come from a fund composed of payments by students of the university as part of their student activity fee. The Court of Appeals found that the moneys in this fund were intended to be used for operating expenses of the newspaper, including the salaries of the editors. In addition, the fund was not the property of the state of Florida, it having been entrusted to a state agency to hold and invest pending the outcome of the appeal. Under those unique facts the Court of Appeals found that "the judgment term requiring that monies from this fund be used to repay lost wages had no true impact on the state treasury; the effect of paying over such trust funds for their intended purpose would be an ancillary one at best." *Schiff v. Williams,* 519 F.2d at 262.

*Bowen v. Hackett,* 387 F.Supp. 1212 (D.R.I.1975) is an example of the careful scrutiny required to determine Eleventh Amendment issues. That case involved the question whether an order directing payments to be made from a state's Employment Security Fund and Temporary Disability Insurance Fund was barred by the Eleventh Amendment. In rejecting that argument, the District Court noted that the money in the funds was not a product of legislative appropriations but was revenue collected from a limited class of persons through an administrative process and segregated from the general revenues of the state. More importantly, the state legislature specifically protected the state's general revenues from liability for any deficits in the fund by providing that the faith and credit of the state had not been pledged in relation to the benefit payments under either program. In light of these circumstances the Court concluded that the facts that the funds were established by statute and that a state officer was trustee of the funds were not sufficient to make them public funds for purposes of the Eleventh Amendment. *Bowen v. Hackett,* 387 F.Supp. at 1220–21.

■ The Court cannot say at this time that the Plaintiffs in this case will be unable to prove that the § 206(a) money in controversy was paid to the state under circumstances similar to those in *Schiff* and treated by the state like the funds in *Bowen.* Plaintiffs may be able to prove that the money was paid by the federal government to the state with the understanding that the money would be distributed by the state to the Plaintiffs. Further, the Plaintiffs may be able to prove that the § 206(a) money has at all times since the time of payment been maintained separately by the state and has not been treated as money available for other purposes. If the Plaintiffs can prove both these facts, then an order directing payment of the remaining § 206(a) money may have no true effect on the state treasury. Since it cannot be said that the Plaintiffs will be unable to prove any set of facts entitling them to the relief sought, the Court must deny the motion to dismiss.

Based on the foregoing, the Court concludes that Plaintiffs are "citizens" within the meaning of the Eleventh Amendment and that Pennsylvania has not waived its Eleventh Amendment immunity in this case. The Plaintiffs' requests for declaratory relief are not prohibited by the Eleventh Amendment. In addition, Plaintiffs' requests to enjoin the Defendants from future violations of federal or state law are not barred by the Eleventh Amendment. Plaintiffs' claims for the § 206(a) money are not subject to dismissal at this time because the Plaintiffs may be able to prove that the § 206(a) money was paid to the state by the federal government with the intention that the money be paid by the state to the Plaintiffs and that the state has maintained the section 206(a) money in a segregated account and has not treated the money as available for uses other than the purposes for which it was paid by the federal government.