527 F.Supp. 982 (1981)
MUNICIPAL AUTHORITY OF the TOWN OF BLOOMSBURG and Upper Moreland-Hatboro Joint Sewer Authority, Plaintiffs,
v.
COMMONWEALTH OF PENNSYLVANIA, Der, et al., Defendants.
Civ. No. 80-0429.
United States District Court, M. D. Pennsylvania.
December 10, 1981.
*983 *984 Ann S. Pepperman, McNerney, Page, Vanderlin & Hall, Williamsport, Pa., for plaintiffs.
Elizabeth K. Schuster, Rhoads, Sinon & Hendershot, Harrisburg, Pa., for Hampden Township.
Michael S. Alushin, John P. Krill, Jr., Asst. Attys. Gen., Allen C. Warshaw, Deputy Atty. Gen., Pa. Dept. of Justice, Harrisburg, Pa., for defendants.
Dean Dunsmore, U. S. Dept. of Justice, Washington, D. C., for third party defendants.

OPINION
MUIR, District Judge.

FINDINGS OF FACT.

I. Petitioners' Introduction.
1. Petitioners are McNerney, Page, Vanderlin & Hall, 433 Market Street, Williamsport, Pennsylvania, 17701.
2. Petitioners seek an award of the following counsel fees and costs incurred in the prosecution and settlement of this action: $231,574.50 in attorneys fees, $3,991.76 for reimbursement of out-of-pocket expenses expended, $1,609.80 for the fees and costs for the final disbursement of the settlement sum. The total sum requested would be paid from the settlement fund in this case.
3. The firm of McNerney, Page, Vanderlin & Hall has represented the class certified Civil Action No. 80-0429 since its certification and has represented the Plaintiffs-Class Representatives in the class action since its inception. McNerney, Page, Vanderlin & Hall coordinated its efforts and activities with Mr. Pursel and Mr. Acton, local counsel for the named Plaintiffs, who participated in the preparation of the initial pleadings, the discovery of information relative to the named Plaintiffs, and the settlement of this action brought in the name of these Plaintiffs. Petitioners also cooperated with counsel for Plaintiffs in related cases pending before this Court, the Commonwealth Court of Pennsylvania, and the United States Court of Claims, and did not duplicate the efforts or work of such other counsel.
4. Although Mr. Pursel and Mr. Acton initially sought attorney's fees in connection with this matter, no testimony was presented at the hearing concerning petitioner's fee award, and on November 25, 1981, their requests for attorneys' fees were withdrawn.

II. History of the Case.

A. The Factual Background

5. Between 1966 and 1972, the named Plaintiffs, the class members, the Intervenors, and the Hampden Township Sewer Authority (hereinafter referred to as "Claimants" or "section 206(a) Claimants" undertook various sewage construction projects to improve the water quality of the streams into which they discharged. The Claimants applied for and received federal sewage construction grants under section 8 of the Federal Water Pollution Control Act, P.L. 84-660, in varying amounts ranging from 3.8% to 44% of their eligible construction costs between June 30, 1966 and July 1, 1972. The amount of the federal grant funds received by each of the claimants under section 8 of the Federal Water Pollution Control Act was less than the maximum federal sewage construction funding then available which was 55% of the eligible costs.
6. In 1972, the federal construction grant program for sewage treatment facilities was extensively amended by the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251 et seq. Pursuant to section 206(a) of the Amendments, 33 U.S.C. § 1286(a), federal grants were provided for construction projects which had not received the maximum federal grant assistance under the original Act, to bring the federal funding for that project up to 55% level.
7. The Environmental Protection Agency, ("EPA"), the federal agency charged with administration of the program, interpreted the amendment and administered the section 206(a) grant program as conferring *985 on it the discretion to pay either the state or the local authorities the grant funds provided thereunder. The Commonwealth Department of Environmental Resources ("DER") also adopted this interpretation of section 206(a).
8. In November, 1972, DER, through its officers and agents, sought out the various Pennsylvania municipalities and municipal authorities, including the Claimants, to request or suggest that they apply for the section 206(a) grant funds through and with the assistance of DER. In response to these requests, the Claimants applied for the section 206(a) grant funds from EPA through DER and were advised by officers of DER that DER was processing their applications. However, at this time, DER also filed its own application for section 206(a) grant funds, a fact not then known to the Claimants. Thereafter, EPA determined to pay approximately $19 million dollars of the section 206(a) grant funds to DER, rather than to the applicant municipal entities, as "reimbursement" for prior state construction grants for these projects.
9. Between 1974 and 1979, $9,225,883.00 of this $19 million was paid to DER rather than to the applicant municipal authorities or municipalities. To date, DER has spent or encumbered, $6,055,808.00 of the $9,225,883.00 of section 206(a) grant funds which it has received, leaving a balance of $3,170,075.00 unspent and unencumbered.
10. Class counsel interpreted section 206(a) as well as its legislative history as mandating that the grant funds be paid to the municipal authorities and municipalities which constructed the project, not to DER.
11. In November, 1975, class counsel instituted a civil action against the then Administrator of EPA, Russell Train, on behalf of the Williamsport Sanitary Authority, both to enjoin the EPA from paying any further section 206(a) grant funds to DER rather than to the municipalities and municipal authorities in Pennsylvania and to recover such funds as had already been paid to and retained by DER. This was Civil Action No. 75-1377 in the United States District Court for the Middle District of Pennsylvania, captioned Williamsport Sanitary Authority v. Train (hereinafter sometimes referred to as the "Train" action).
12. In February 1979, the Honorable R. Dixon Herman issued an opinion and order in the Train action, determining, inter alia, that the Williamsport Sanitary Authority, not DER, was entitled to the section 206(a) grant funds and directing EPA to pay the Williamsport Sanitary Authority its section 206(a) grant funds. Judge Herman did not rule on the federal government's obligations, if any, to the Williamsport Sanitary Authority or any of the other Pennsylvania municipal authorities with respect to the section 206(a) grant funds previously paid to DER because DER was not a party to the action. Williamsport Sanitary Authority v. Train, 464 F.Supp. 768 (M.D.Pa.1979).
13. As a result of the Train suit, EPA paid the remaining $10,000,000.00 in section 206(a) grant funds which had not yet been disbursed, but had been earmarked to be paid to DER, to the Claimants. At that time, most, if not all, of the section 206(a) claimants had no idea why they had received these funds or that they might have a claim against DER for the $9 million already paid to DER.
14. In May 1979, DER, in response to the Train decision, instituted a declaratory judgment action against the Williamsport Sanitary Authority (hereinafter sometimes the "Williamsport" action) in the Commonwealth Court of Pennsylvania seeking a declaration that it was entitled to the $9,225,883.00 of section 206(a) grant funds which had already been paid to and partially spent by DER. The Williamsport Authority was again represented by class counsel. The Williamsport Sanitary Authority removed the Williamsport action to the United States District Court for the Middle District of Pennsylvania in June, 1979, where the action was assigned to the undersigned judge, and filed counterclaims against DER and its officers seeking to recover the section 206(a) funds paid to the state, as well as a declaration of the Authority's right thereto. In this action, the Williamsport Sanitary Authority was sued *986 by the Commonwealth individually and as a representative of a defendant class of all municipal entities with claims against DER for section 206(a) funds in Pennsylvania. Ultimately, after discovery into the class claims and extensive briefing, the action was not certified as a defendant class action.
15. After extensive discovery, pre-trial motions and other pre-trial proceedings, this Court entered judgment in the Williamsport action on September 15, 1980. The Court granted the Williamsport Sanitary Authority's request for declaratory relief, declaring that the municipal authority which constructed the sewage project for which the grant was made, not DER, was entitled to the grant funds, but declined to award any affirmative relief on the ground that such relief was barred by the Eleventh Amendment. Com. of Pa. Dept. of Environmental Resources v. Williamsport Sanitary Authority, 497 F.Supp. 1173 (M.D.Pa. 1980). The Williamsport action is now the subject of cross appeals in the United States Court of Appeals for the Third Circuit, which appeals have been stayed as a result of proposed settlement of these actions.

B. The Institution of the Action

16. In March and April of 1980, Ann S. Pepperman of McNerney, Page, Vanderlin & Hall was contacted by various Pennsylvania municipal authorities and municipal entities for the purpose of investigating the possibility of a lawsuit against the Commonwealth Department of Environmental Resources for the recovery of the grant funds paid by EPA to DER under section 206(a), in light of the Train and Williamsport actions.
17. These municipal authorities and municipalities were made aware of their claims to the balance of the section 206(a) funds, in part, as a result of a newsletter circulated by the Pennsylvania Municipal Authorities Association at the suggestion of class counsel who were concerned that if these claimants did not act promptly, their claims would be barred by the passage of time, if the claims were not already barred.
18. McNerney, Page, Vanderlin & Hall reviewed documents produced by DER in the Williamsport action which related to the class plaintiffs such as their grant documents and section 206(a) grant applications, the answers to interrogatories which had been filed in the Williamsport action which related to the claims of the class plaintiffs, the depositions which had been taken in the Williamsport action, and reviewed their research in the Williamsport and Train actions, to determine the merits and chances of success of an action on behalf of other Pennsylvania municipal authorities and municipalities and to determine the best avenues for relief. The firm also relied on its previous research in the Williamsport action relative to class certification for its determination that such an action could, and should, be brought as a class action on behalf of all affected municipal entities in Pennsylvania.
19. The Municipal Authority for the Town of Bloomsburg and the Upper Moreland-Hatboro Joint Sewer Authority indicated their interest in having class counsel institute a suit on behalf of themselves and a class of all similarly situated municipal entities in Pennsylvania to recover the section 206(a) funds from DER.
20. Several other authorities who contacted class counsel indicated that they were reluctant to institute such an action because of the costs, in light of the size and strength of their claims, and in some cases, because of their reluctance to sue DER. They indicated that they were willing to be part of a class and share in any recovery the class would obtain but not to institute their own independent actions.
21. On April 21, 1980, class counsel filed the instant action in the United States District Court for the Middle District of Pennsylvania on behalf of the named plaintiffs and proposed class. The Complaint named the Commonwealth Department of Environmental Resources and various state officers as defendants. All of the named Defendants, with the exception of Robert Casey, State Treasurer, were counterclaim defendants *987 in the Williamsport action. The action sought declaratory relief and injunctive relief compelling the defendants to remit the $9,225,883.00 in section 206(a) grant funds to the named plaintiffs and the class.
22. Class counsel also filed a complaint against the same named defendants on behalf of the same named plaintiffs and class in the Commonwealth Court of Pennsylvania on April 21, 1980. The causes of action asserted in the Commonwealth Court action were the same as or essentially the same as those asserted in the instant action. The Commonwealth Court action was filed as a "back-up" action for the instant action, based on class counsel's assessment of the chances of obtaining a monetary recovery in the action in this court in the event that it was determined that the Eleventh Amendment to the United States Constitution barred affirmative relief ordering the state to return the section 206(a) grant funds to the named Plaintiffs and the class in the action in this court.
23. On May 9, 1980, class counsel filed an Amended Complaint, incorporating a civil rights act count based on a recent Supreme Court decision which had been handed down subsequent to the filing of the Complaint. A similar amendment was made to the Complaint filed in the Commonwealth Court.
24. The Defendants promptly filed a motion to dismiss the action pending in this Court, relying primarily on the Eleventh Amendment argument raised in the Williamsport action. The Defendants also filed Preliminary Objections to the Complaint filed in the Commonwealth Court raising a plethora of affirmative defenses including exhaustion of administrative remedies, statute of limitations, and sovereign immunity.
25. By order dated August 19, 1980, this Court denied the motion to dismiss as to the defendant individual state officers, but granted the motion as to DER, basing its decision, in part, on Judge Herman's decision in the Williamsport action. In preparing their opposition to the motion to dismiss, class counsel was aided substantially by their research and briefs filed in the Williamsport action in response to a similar motion to dismiss by the same defendants.
26. Numerous other actions were instituted at this time in this Court, the Commonwealth Court, and the United States Court of Claims by other section 206(a) claimants represented by two other law firms not involved in this Petition. DER was not a named defendant in the Court of Claims actions, which were damages actions against the United States and EPA, but was thereafter joined as a Third Party Defendant by the EPA.

C. Class Certification

26. On June 6, 1980 class counsel, on behalf of the named Plaintiffs, filed a motion for certification of the action as a class action and on June 20, 1980, filed a brief in support thereof. After a brief stay of the ruling on the motion for class certification, this Court issued an order certifying the class on October 21, 1980 and directing class counsel to notify the class members of the certification of the action and of their right to exclude themselves from the action.
27. In October 1980, class counsel mailed the notices of the certification of the action. In response to the notice, class counsel received numerous inquiries from various class members relative to the nature of the claims and the status of the case.
28. Ultimately 32 class members excluded themselves from the class.

D. Intervention and Third Party Defendants

29. Thirty-one of the municipal authorities and municipalities which excluded themselves from the class intervened directly in this action, represented by independent counsel. The intervention was approved by this Court in a May 16, 1981 order. These claimants intervened in this action to ensure themselves the opportunity to participate in any record which was made in this case, not because they felt there was any chance of obtaining affirmative relief in this suit.
*988 30. On September 8, 1980, the state defendants filed a Third Party Complaint against the United States Environmental Protection Agency and the Administrator thereof. The Third Party Defendants moved to dismiss the Complaint and the motion was granted by this Court.
31. Since the Williamsport action had been brought as a defendant class action, class counsel's discovery in that action had included the facts relative to the claims of the class members, as well as the Williamsport Sanitary Authority. From a review of the results of discovery conducted in the Williamsport action, class counsel were able to collect many of the relevant facts about the claims of the class members and to piece together the general picture relative to the actions of EPA and DER and the class members. By so doing, class counsel eliminated the need for duplicitous discovery in this action and reduced the amount of time devoted to discovery in this action.
32. Class counsel also reviewed the three sets of interrogatories which had been prepared in the Williamsport action as a basis for the interrogatories which were filed on behalf of the class in the instant action. Class counsel filed and served a set of more than 300 interrogatories on the defendants in November 1980 covering most of the areas which remained in dispute between the parties. Class counsel also requested the production of DER's files relative to the construction projects of the class members.
33. After submission of these discovery requests, class counsel conferred with DER's counsel by telephone and in person in an attempt to resolve objections to the interrogatories and to clarify the nature of the information which the class counsel sought to elicit from the Defendants. By working closely with DER and its counsel, class counsel was able to avoid unnecessary motions and briefs submitted to this Court and to elicit a great amount of pertinent information.
34. Class counsel also made several trips to Harrisburg to inspect DER's files on the class members.

E. Conference of Counsel

35. By order dated October 21, 1980, this Court directed the parties in the various actions in the United States District Court to meet and confer to discuss methods to expedite the litigation of the matter and to report to the Court by January 15, 1981. Class counsel arranged the meeting which was held at its offices on January 6, 1981. Class counsel also took the lead in preparing the Report to the Court filed on January 15, 1981, in response to the Order and in the joint motions and briefs which were filed in connection with this Report.
36. At the January 6, 1981 conference, class counsel made two suggestions which substantially expedited the litigation and settlement of the matter and contributed to the efficient litigation of the actions.
37. First, class counsel suggested that the trial date for the class action then set for January 1981 be stayed pending the resolution of the appeals of the Williamsport Sanitary Authority and the Commonwealth Department of Environmental Resources and state officers in the Williamsport action. Since most of the issues raised in the instant case were the same as or were substantially similar to those presented in the Williamsport action, there appeared to be a significant possibility that the resolution of the appeal in that case would resolve the complex legal issues pending in the instant action and a stay would avoid unnecessary expenditure of time in trying issues resolved by the Court of Appeals. Counsel for the other parties concurred.
38. Second, class counsel suggested that no new discovery be instituted for a two month period while the parties met and attempted to reach a set of undisputed facts. From class counsel's review of the information provided in discovery to that time in this action and in the Williamsport action and from their general knowledge of the case, it appeared that most of the essential facts in the case were not in dispute. Such meetings were designed to eliminate *989 duplicitous discovery in this case of facts which were not in dispute.
39. Accordingly, class counsel moved on behalf of all the parties to stay the action pending the resolution of the appeal in the Williamsport action and to stay new discovery pending the efforts of counsel to meet and prepare a set of undisputed facts within a three-month period.
40. The Court approved both requests. As a result of these requests, class counsel saved a significant amount of time and effort by avoiding unnecessary discovery and expedited the litigation of the action.
41. Between January 15, 1981, and March 15, 1981, class action counsel met on several occasions with counsel for the Intervenors, counsel for the Hampden Township Sewer Authority and counsel for DER and EPA, in Harrisburg, to prepare a set of undisputed facts for use at trial. These meetings produced substantial benefits in terms of the discovery of additional information and of the merits of the Defendants' positions, both as to the facts and to the law of the case, and in preparation for trial. Had the case been tried and the stipulations been used, these meetings would have also resulted in a saving of time inasmuch as most of the facts involved in the case were the subject of agreement. Moreover, these meetings served to reduce the areas in which it was anticipated that discovery would be necessary by disclosing the areas of agreement between counsel.

F. Settlement Negotiations

42. McNerney, Page, Vanderlin & Hall conducted the settlement negotiations on behalf of the class.
43. The settlement negotiations commenced in the spring of 1980 and continued through the summer of 1981, involving numerous conferences of counsel at various locations in Pennsylvania and in Washington, D.C.
44. The settlement negotiations posed several complex difficulties. Among these was the state defendants' position that they would not settle any of the claims unless all of the claims and actions were resolved. More than 30 parties were involved in more than 50 suits in this court, the Commonwealth Court and the United States Court of Claims, with two different sets of defendants, the federal defendants and the state defendants. A further complication was the fact that some parties had claims in all three courts against both sets of the defendants while others, including the class, had not been able to file an action in the Court of Claims where the federal defendants could be reached because class certification had been denied by that court. The framework which finally resolved these difficulties and settled the action was one proposed by class counsel.
45. Class counsel were aware that the only realistic chance for recovery for the class was through a negotiated settlement because of the weakness of the class's case.
46. Through the efforts of McNerney, Page, Vanderlin & Hall, the state defendants increased their settlement offer from 1¢ to $3,170,075.00, the balance of the unencumbered section 206(a) funds held by DER, in a period of six months. Class counsel also successfully reduced the demands of the Court of Claims Plaintiffs for a share of the state's settlement fund from $1 million to $500,000.00. Moreover, class counsel participated to a certain extent in the negotiations with EPA which increased its contribution to the settlement from nothing, to $250,000.00, to $500,000.00, and ultimately to $1 million.
47. The proposed settlement agreement, which has been termed the "pivotal" agreement by the parties, was prepared by class counsel.
48. Class counsel petitioned this Court for the approval of the proposed settlement and, after conducting a hearing thereof, this Court approved the settlement.
49. No class member objected to the proposed settlement.
50. The Court directed class counsel to notify all class members of the settlement, of Petitioners' request for a fee not in excess of $250,000.00, plus costs, and of the *990 class members' right to file objections to the fee request which was done.
51. No class member has objected to the fee request.
52. Class counsel received the class's share of the settlement fund prior to the November 16, 1981 hearing and invested the funds on behalf of the class until the amount to be distributed to the class members is determined.
53. To distribute the settlement fund to the class members, class counsel made calculations as to the pro rata share of each member in the settlement funds and of each member's share of the interest earned.
54. It is anticipated that class counsel will receive numerous inquiries from the class members after distribution of the settlement sum.

III. The Fee Requested by McNerney, Page, Vanderlin & Hall.

A. The "Lodestar" Requested by McNerney, Page, Vanderlin & Hall

55. The "lodestar" requested by McNerney, Page, Vanderlin & Hall, is $51,461.00, based on the hours of service expended in representing the class multiplied by the historic hourly rates of lawyers in the firm

(a) The Time Expended by McNerney, Page, Vanderlin & Hall

56. The time records of McNerney, Page, Vanderlin & Hall were compiled and reviewed pursuant to the supervision and direction of Ann S. Pepperman, Esquire.
57. At all times during the period of this litigation, attorneys at McNerney, Page, Vanderlin & Hall were required to keep accurate contemporaneous time records. Copies of these time records were available for inspection by the court and interested parties at the hearing.
58. All the time identified and hereinafter described was taken from these contemporaneous time records.
59. Through October 2, 1981, the total chargeable time actually expended by McNerney, Page, Vanderlin & Hall in the prosecution and settlement of this action is as follows:

 (i) Attorney Hours
 O. William Vanderlin 51.0
 T. Max Hall 1.3
 Charles J. McKelvey 2.3
 E. Eugene Yaw 53.1
 Ann S. Pepperman 397.8
 Brett O. Feese 168.9
 _____
 sub-total 674.9
 (ii) Paralegals 121.1
 _____
 Total hours 795.3

60. Petitioners McNerney, Page, Vanderlin & Hall, classified the time expended by the firm in the prosecution of this case in the following categories:
(a) Pleadings and Motions: This category includes drafting, reviewing, and filing of all pleadings, motions, proposed orders, stipulations and similar documents dealing with the merits and procedures involved in this litigation. (38.9 hours)
(b) Discovery: This category includes all time expended in drafting and reviewing interrogatories and requests for production of documents, inspecting and analyzing documents produced by the Defendants, and a portion of the time expended in the conferences related to the development of stipulations of undisputed facts. (79.60 hours)
(c) Court Appearances and Preparation: This category includes all District Court and Commonwealth Court appearances and preparation therefor. (142.60 hours)
(d) Legal Research and Writing: This category involves all legal research and legal writing for all aspects of this litigation and the settlement thereof. It also includes all briefs and research of direct benefit to the class in the Commonwealth Court of Pennsylvania. It does not include any legal research or writing in connection with the Petition for an award of attorney's fees. (279.05 hours)
(e) Class Action Notice and Administration: This category includes all work required in assembling class membership list, preparing notices for mailing, and responding to inquiries from class members following the notices sent. (21.30 hours)

*991 (f) Settlement Negotiations: This category includes all negotiations with defendants' counsel and counsel for the other section 206(a) claimants relating to settlement and the preparation for those negotiations and negotiations relating to the form of the settlement agreement, form of notice and proposed settlement order. This category also includes the time expended in preparing the settlement agreements and reviewing the proposed settlement agreements and documents submitted by other counsel. (129.30 hours)
(g) Settlement Procedures and Administration: These categories involved the establishment of procedures for administering settlement. (17.40 hours)
(h) Fee Petition: This category involves all work expended in preparing this Fee Petition and all supporting documents. No compensation was sought for this category of work. (0 hours)
(i) Strategy, Case Planning and General Administration: This category covers time expended relating principally to strategy and case planning and to general preparation, correspondence, telephone, file review and time not otherwise specifically allocated. (87.75 hours)
61. The hours for which Petitioner McNerney, Page, Vanderlin & Hall requests compensation include the hours expended in the Commonwealth Court action.
62. The time expended on behalf of the class by McNerney, Page, Vanderlin & Hall in the Commonwealth Court action directly benefited the class in several ways, including:
(a) That action provided the class with an alternate avenue of relief in the event affirmative relief was held to be barred in this Court. The chances of success in trial in the Commonwealth Court were actually somewhat better than in this Court.
(b) That action created, in part, a climate which encouraged the settlement of this action.
63. Many of the hours expended by McNerney, Page, Vanderlin & Hall were during weekends, evenings and holidays. Many more hours were expended out of town at various locations, either inspecting documents, engaging in settlement negotiations, or arguing before courts.
64. McNerney, Page, Vanderlin & Hall is a successor to a partnership formed about 1946 by Joseph McNerney and Allen Page. It has an AV rating in Martindale and Hubbell.
65. O. William Vanderlin is the senior partner of the firm of McNerney, Page, Vanderlin & Hall. Mr. Vanderlin is an honors graduate of the Pennsylvania State University (B.A. 1941) and of the Dickinson School of Law (L.L.B. 1950), where he was an editor of the Dickinson Law Review. Mr. Vanderlin is also a graduate of the Harvard School of Business Administration (I.A. 1942). Upon graduation from law school, Mr. Vanderlin was a clerk to Judge Charles Scott Williams, President Judge of the Lycoming County Court of Common Pleas. He became associated with the firm of McNerney and Page in 1950, and became a partner in 1952. Mr. Vanderlin is chairman of the Labor Committee of the Pennsylvania Municipal Authorities Association, a member of the Pennsylvania Prevailing Wages Appeal Board, and a member of the American, Pennsylvania, Lycoming County Bar Associations. Mr. Vanderlin engaged in extensive trial work in state and federal courts between 1950 and 1958. From 1958 to date, Mr. Vanderlin has concentrated in the field of labor relations with particular emphasis on negotiations.
66. T. Max Hall is a graduate of Lycoming College (B.A. 1956) and of the Dickinson School of Law (L.L.B. 1959). He is a member of the American, Pennsylvania, and Lycoming County Bar Associations.
67. Charles J. McKelvey is an honors graduate from the University of Scranton (B.A. 1950) and a graduate of Georgetown University Law Center (L.L.B. 1953, L.L.M. 1959). He is admitted to the bars of the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit, the District of Columbia *992 Court of Appeals, the Supreme Court of Pennsylvania, the United States District Court for the Middle District of Pennsylvania, and the Lycoming County Court of Common Pleas. From 1959 to 1969, Mr. McKelvey was employed as an attorney by the National Labor Relations Board in Washington, D.C. Mr. McKelvey joined the firm of McNerney, Page, Vanderlin & Hall in 1969 where his practice has consisted primarily of federal and state trial work. Mr. McKelvey is a member of the American, Pennsylvania, and Lycoming County Bar Associations, presently being vice-president of the Lycoming County Bar Association, and a member of the American Trial Lawyers Association.
68. E. Eugene Yaw attended Bucknell University and is a graduate of Lycoming College (B.A. 1970) and of the American University School of Law (J.D. 1973). Upon graduation from American University School of Law, Mr. Yaw was a law clerk to the Honorable Charles F. Greevy, President Judge of the Lycoming County Court of Common Pleas. Mr. Yaw has been with the firm of McNerney, Page, Vanderlin & Hall since 1975, becoming a partner in the firm in 1977. Mr. Yaw is a member of the American, Pennsylvania, Lycoming County Bar Associations, the Pennsylvania Trial Lawyers Association, and the American Trial Lawyers Association. He is admitted to practice before the United States District Court for the Middle District of Pennsylvania, the Pennsylvania Supreme Court, and the Lycoming County Court of Common Pleas. Mr. Yaw's practice has consisted of extensive trial work in state and federal courts, including class action litigation involving the Toyota Anti-trust suits.
69. Ann S. Pepperman is an honors graduate of Gettysburg College (B.A. 1973) (summa cum laude) and of the Georgetown University Law Center (J.D. 1976), where she was Editor-in-Chief of the American Criminal Law Review. Upon graduation from Georgetown University Law Center, Ms. Pepperman was employed as a law clerk to the Honorable Oliver Gasch of the United States District Court for the District of Columbia, where she worked on several class action suits pending in that court. Ms. Pepperman became associated with the firm of McNerney, Page, Vanderlin & Hall in 1977 and became a partner in 1980. Ms. Pepperman is a member of the bar of the Supreme Court of the United States, the Fourth Circuit Court of Appeals, the Third Circuit Court of Appeals, the Pennsylvania Supreme Court, the Middle District of Pennsylvania, and the Lycoming County Court of Common Pleas. Ms. Pepperman is a member of the American, Pennsylvania, Lycoming Bar Associations and of the American Trial Lawyers Association.
70. Brett O. Feese graduated with honors from Indiana University, (B.A. 1975) (summa cum laude), and with honors from the Dickinson School of Law (J.D. 1979). Upon graduation, he was associated with the Williamsport firm of Stewart, Murphy, Smith, Mussina, Harris and Rieders until April 1980 when he became associated with the firm of McNerney, Page, Vanderlin & Hall.

(b) The Hourly Rates of McNerney, Page, Vanderlin & Hall

71. The fee requested by McNerney, Page, Vanderlin & Hall is based on the firm's historic rates, i.e., the rates in effect at the time the services were rendered.
72. The normal hourly billing rate for the firm for all attorneys at McNerney, Page, Vanderlin & Hall from April 1980 until June 1, 1981, was $70.00 per hour.
73. Since June 1, 1981, to the present time, normal hourly rates for attorneys at McNerney, Page, Vanderlin & Hall are as follows:

 O. William Vanderlin $ 80.00
 T. Max Hall $100.00
 George V. Cohen $ 80.00
 William R. Tait, Jr. $ 80.00
 Charles J. McKelvey $ 80.00
 E. Eugene Yaw $ 80.00
 Michael H. Collins $ 80.00
 Elliott B. Weiss $ 80.00
 Ann S. Pepperman $ 80.00
 Brett O. Feese $ 70.00

74. The foregoing hourly rates are the rates which McNerney, Page, Vanderlin & Hall would have charged other clients for *993 services rendered during this period had they not been engaged in the work in the above-captioned action.
75. The rates set forth are reasonable hourly rates for these attorneys in the community in which they practice for the period involved for litigation of this type regularly and currently billed without reference to contingency or chances of success, the quality of work, or other factors which may properly be taken into consideration.
76. McNerney, Page, Vanderlin & Hall utilizes paralegals instead of attorneys wherever feasible. The rates charged by McNerney, Page, Vanderlin & Hall to clients for paraprofessionals' services undertaken on a non-contingency basis is $25.00 per hour.
77. The rate of $25.00 per hour is a reasonable rate in this community for the services of paralegals.
78. Paralegals at McNerney, Page, Vanderlin & Hall are required to keep contemporaneous time records.
79. Paralegals performed the following types of work in this case:
(a) Review of documents produced by defendants and other parties;
(b) Investigation;
(c) Research;
(d) Assistance in class administration;
(e) Assistance in the preparation and collection of exhibits;
(f) General assistance in administration of the files of the case.
80. All paralegals employed by McNerney, Page, Vanderlin & Hall have been graduated from certified paralegal schools or have received their paralegal training from McNerney, Page, Vanderlin & Hall.
81. The chart attached hereto and marked Appendix A reflects the breakdown by attorney and paralegal of hours expended on this matter and the corresponding dollar amounts.
82. McNerney, Page, Vanderlin & Hall's contracts with the Municipal Authority of the Town of Bloomsburg and the Upper Moreland-Hatboro Joint Sewer Authority were fully contingent in nature and completely dependent upon a successful recovery, with one exception. The agreement provided that in the event the actions were settled within a few weeks after the entry of the judgment following trial by this Court in the Williamsport action, counsel would be compensated solely on an hourly basis for their services rendered throughout that period, plus advancements of out-of-pocket costs. The purpose of this qualification was to benefit these clients in the event that the action was settled solely as a result of the judgment of the Williamsport action prior to the expenditure of any substantial resources or time by McNerney, Page, Vanderlin & Hall.
83. McNerney, Page, Vanderlin & Hall has not received any fees from the Municipal Authority of the Town of Bloomsburg or the Upper Moreland-Hatboro Joint Sewer Authority for this case.
84. The contingent fee agreements provided for a fee of one-third of the recovery. The requested fee by McNerney, Page, Vanderlin & Hall is substantially less than its contractual agreement. It is approximately $191,000.00 less than such a one-third recovery.

B. The Multiplier Requested by McNerney, Page, Vanderlin & Hall

(a) The Contingent Nature of Success in This Action

85. McNerney, Page, Vanderlin & Hall requests that the lodestar be increased by a multiplier of 4.5, for a total requested fee of $231,574.50. This requested fee is approximately 18% of the settlement sum recovered for the class and 10% of the total amount received in this action.
86. The multiplier is justified by the contingent nature of the case and the quality of the work.
87. At the time this action was instituted, McNerney, Page, Vanderlin & Hall faced an extremely large risk of not recovering anything in this suit.
88. The chances of recovering any monetary relief after trial may fairly have been *994 dismissed as negligible. The Defendants had strong affirmative defenses of laches and the statute of limitations as the suit was filed six years after the first payment of section 206(a) funds to DER and eight years after DER filed its competing application for the funds. The state also had a fairly strong exhaustion of remedies defense based on 40 C.F.R. § 35.895 as to the class members. With respect to damages, the amount of the damages suffered by each class member was clear. However, the ability of the class members to recover those damages in an action against state officers in their official capacities in federal court was unclear. The chances of actually being awarded these damages by a federal court were small in light of the Eleventh Amendment and related problems.
89. The chances of recovering anything through negotiated settlement were remote in light of the state defendants' historic refusal to consider settling these claims.
90. There was a significant risk that the class would not be certified in this action or in the Commonwealth Court action, in which case counsel would never have been compensated for their work and expenses on behalf of the class.
91. The risks of this litigation were reflected in the reluctance of the class members to institute their own actions in that the class members did not think it worth the time and expense and they preferred to take the chance that this action would be certified as a class action and that some recovery would be obtained therein.
92. This action was also undertaken without the benefit of any prior governmental action or adjudication such as frequently precedes other large-scale class actions. While a judgment had been entered in the related case of Williamsport Sanitary Authority v. Train, 464 F.Supp. 768 (M.D. Pa.1979), that judgment was against EPA, not DER, and the facts developed in Train concerned the actions of EPA, not DER. At the time of the filing of this action, no judgment had been entered in the Williamsport action which was pending before the Court. Moreover, the benefit class counsel obtained from the Williamsport action was not by "piggy-backing" onto someone else's work, but from class counsel's own work in that action.
93. This action posed numerous complex and difficult legal and factual questions: the novel and thorny questions concerning the application of the Eleventh Amendment to relief affecting the balance of the section 206(a) funds held by DER; questions of first impression as to the interpretation of 40 C.F.R. § 35.895, the implication of a cause of action for equitable relief under section 206(a), and the interpretation of newly enacted state statutes of limitations; and complicated questions of whether laches or a statute of limitations applied. The primary theory of recovery itself, the enforcement of the municipal entities' rights against the state under section 206(a), was relatively novel, having, in essence, been created by class counsel in the Williamsport and Train actions. Of all the municipal entities across this country, this argument had only been asserted once, by one Authority, and that in the Williamsport action which was still in discovery before this Court at the time this action was filed.
94. The financial risks to counsel in developing the case without any guarantee of compensation are also a factor warranting an increase in the "lodestar."
95. Class counsel was retained in this case on a contingent basis, expending 795.3 hours and $3,991.76 in out of pocket costs without any guarantee of remuneration over a period of almost two years. This is a substantial financial risk to a small firm in the community.

(b) The Quality of the Work

96. The settlement sum recovered by McNerney, Page, Vanderlin & Hall for the class members, $1,285,966.10 or 27.377839% of their claims, was a good recovery for the class. Had the case been tried, a likely result would have been no recovery for the class, either because their claims would have been barred by the affirmative defenses raised by the Defendants or affirmative relief would have been barred by the Eleventh Amendment.
*995 97. Class counsel obtained the payment by the state of all of the unencumbered section 206(a) funds it held. While a portion of this $3,170,075 was paid to Claimants other than the class members, and Intervenors in the instant action, the sums paid to Hampden and the Williamsport Sanitary Authority would have had to be paid in the event of such an order. By allocating $500,000.00 to settle the Court of Claims actions, the class members' recovery was reduced by approximately 9% which is offset by the costs saved in avoiding protracted litigation, including a trial of the claims and appeals. In addition, the settlement avoided difficult enforcement problems and state-federal comity questions that recovery under such a judgment would have entailed.
98. This substantial benefit was obtained for class members who, for the most part, were unaware that they had a claim against DER or, in a few cases, were reluctant to assert it. Had this action not been brought by class counsel, most of these class members would have recovered nothing, and would not have known about the existence of their claims.
99. Not only did class counsel obtain a substantial monetary benefit for the class members in the instant action, but class counsel also obtained a benefit for all of the section 206(a) claimants in Pennsylvania, including the class members, at no cost or expense to them, in the Train action. As a direct result of class counsel's work in Train, EPA not only paid the Williamsport Sanitary Authority, rather than DER, the balance of the section 206(a) funds appropriated for its project, but also paid approximately $10 million in section 206(a) funds still held by EPA to the municipal entities involved (the class members, the Intervenors and Hampden) rather than to DER. The class members received approximately one-half of this sum, or about $5 million. At the time, most of these municipal entities did not know why they received the federal funds or that they had any claim to any federal grant funds which were being paid by EPA to DER.
100. Class counsel expended more than 100 hours in the Train litigation, primarily in legal research and writing which created the section 206(a) cause of action. Class counsel were compensated at a rate of $40.00 to $50.00 per hour for this work, which was $20.00 to $30.00 less than their normal hourly rate at that time.
101. Class counsel had special expertise in the subject matter as a result of their work in the Train and Williamsport actions which directly benefited the class, both by creating the class's cause of action and by substantially reducing the time expended in the case. This is one of the unique features of the instant action warranting a substantial multiplier.
102. Class counsel actually created the cause of action for section 206(a) grant funds in Train, tested its applicability to DER and the grant funds paid to DER in Williamsport, and then applied this cause of action for the benefit of the class in this action.
103. No one else challenged EPA's administration of the section 206(a) grant program.
104. Class counsel's knowledge of the factual and legal background of the case enabled them to enter into settlement negotiations at a relatively early stage of the proceedings.
105. Defense counsel's awareness of the expertise of class counsel appears to have contributed to defense counsel's decision to settle the action at such an early stage and to offer all of the remaining section 206(a) funds to settle the action.
106. The special expertise of class counsel from the Williamsport action enabled class counsel to obtain the maximum ultimate recovery for the class with a minimum investment of time and costs.
107. Class counsel spent a total of 501 attorneys' hours and 21.25 paralegal hours in litigation of the Williamsport action. Had counsel not litigated the Williamsport action, this time would have had to be expended in the litigation of this action and these hours would have been included in the *996 "lodestar" fee. The 501 hours of attorney time and 21.25 hours of paralegal time, multiplied by the normal hourly billing rates of $70.00 and $25.00, respectively, would have increased the "lodestar" fee by $35,792.00, approximately 75% of the "lodestar," to $87,825.80. With a "lodestar" of $87,825.80, the requested fee would involve a multiplier of less than 2¾.
108. Class counsel used virtually all of the legal research, legal writing, discovery and factual development and related expertise developed in the Williamsport action in this class action. By not duplicating the work done in the Williamsport action, class counsel achieved a maximum benefit for the class with a minimum investment of time.
109. Compensation for this time in the Williamsport action was at less than class counsel's normal hourly rate. Between May 18, 1979 and December 5, 1979, counsel were compensated for 143 hours of work at the hourly rate of $40.00 per hour when their normal hourly rate was $70.00 per hour, at a loss of $4,290.00. Between December 5, 1979 and April 17, 1981, counsel were compensated for 59.25 hours at a rate of $50.00 per hour, and 228 hours at a rate of $60.00 per hour, when the normal hourly rate was $70.00 per hour. With a lodestar which included the uncompensated time in Train and Williamsport, $7,755.00 and $1,313.00 respectively, for a total of $60,529, the requested fee would reflect a 3.83 multiplier.
110. That the special expertise of class counsel in the subject matter of this suit contributed substantially to the efficient litigation of this action, producing a maximum benefit to the class with a minimum expenditure of time, is further evidenced by a comparison with the time spent by other counsel involved in this action. The firm which represents the intervenors spent more than 2000 hours on the case, approximately 3 times the hours spent by class counsel. Ms. Schuster, whose firm represents Hampden spent approximately 90% of her time on this action between April 1980 and January 1981, a significantly higher percentage than was spent by class counsel.
111. The negotiations which resulted in the settlement involved multiple parties pressing numerous demands on class counsel and more than 50 actions in three different courts, this Court, the Commonwealth Court and the Court of Claims, and dozens of meetings and telephone conferences from Williamsport to Harrisburg and Washington, D.C. Class counsel increased the state's offer to the state's settlement amount within six to seven months after instituting the action.
112. Equally, if not more difficult, were the negotiations with the other section 206(a) claimants who were not members of the class, primarily those represented by Mr. Stover. In those negotiations, class counsel was saddled with two severe factors. First, DER's offer was contingent upon the settlement of all of the claims against it, including those arising from the suits of Mr. Stover's clients, intervenors here; in the Court of Claims. Hence, class counsel had to negotiate a settlement of all of the claims and actions to ensure a settlement of the class claims. Second, a settlement of the actions was the only realistic chance of any recovery for the class because of the Eleventh Amendment and related bars to a monetary recovery in this court, the sovereign immunity bar to any recovery in this court, the sovereign immunity bar to recovery in the Commonwealth Court, the strength of the affirmative defenses, and the practical problems of enforcing a judgment.
113. Following this Court's October 21, 1980 order, class counsel proposed that additional discovery be stayed while the parties attempted to reach agreement on a set of undisputed facts, thereby reducing the need for discovery into those issues which were not truly in dispute, and saving a substantial amount of time in unnecessary discovery for the class and all other parties. This expedited the case by limiting the discovery to those areas involving disputed facts. Had the case been tried, this would have saved substantial time.
*997 114. At this meeting, class counsel suggested that the trial of this action be stayed pending the Third Circuit's decision in the cross-appeals in the Williamsport action. While this may have delayed the trial of the case, it avoided duplicitous briefings and trials of issues which might have been resolved by the Court of Appeals.
115. Both of these proposals resulted in a substantial reduction of the time spent on the case by all parties and the Court. Without these procedures, the "lodestar" would have been substantially larger because the attorney and paralegal hours would have been much greater.
116. The use of the pleadings, briefs, research and discovery from the Williamsport action also effected a substantial reduction in time and contributed to the efficient litigation of this action.

IV. Reimbursement of Costs Incurred by McNerney, Page, Vanderlin & Hall.
117. McNerney, Page, Vanderlin & Hall expended a total of $3,991.76 for costs and expenses.
118. All of the costs for which reimbursement is sought were necessary for the conduct of the litigation. The costs include filing and service fees, telephone calls, the costs of reproduction of pleadings, motions, briefs, settlement agreements and notices to the class, the costs of mailings and trips. The expenses relating to trips involved meetings to prepare stipulations of undisputed facts, the inspection of documents at the offices of DER and settlement negotiations.
119. The fair and reasonable costs of reproduction include xeroxing by class counsel billed at a rate of 15¢ per page and the costs paid by class counsel to a copying service for more extensive documents, at a rate of 3¢ per page. The use of a copying service, where possible, for volume work resulted in a savings of 12¢ per page. The mileage for trip expenses was 20¢ per mile until April 1980, when it was increased to 25¢ per mile. This is the normal mileage reimbursement paid to class counsel. The filing and service fees and telephone expenses are the set fees paid by class counsel to the Courts and telephone company, respectively.

V. Costs of Administration and Disbursement of the Settlement Fund.
120. Class counsel also requests an award of $1,609.80 for the time and expenses reasonably to be expended in the final administration and disbursement of the settlement fund, i.e., for time and expenses incurred after this Court's order relative to the instant fee petition in making payment to the class members.
121. The final administration and disbursement of the settlement fund will, at least, require 10 hours of paralegal time and 15 hours of attorneys' time.
122. After deduction of the amount of attorney's fees and costs from the settlement fund, the amount of each of the 90 class member's recovery from the balance of the settlement fund will be calculated. To minimize the costs to the class, these calculations will be done by a paralegal under the supervision of an attorney. Non-attorney time will also be expended in preparing and sending the checks to the class members.
123. The 15 hours in attorney time will be spent in supervising the calculation of the amounts due the class members and in responding to inquiries from class members or their local counsel. Based on class counsel's experience of sending the notice of the certification of the action as a class action and the notice of the settlement, class counsel may reasonably anticipate receiving a number of inquiries as to the reason for the payments and the basis for the amounts of the payments.
124. Class counsel's request for reimbursement for these hours at the normal hourly billing rate of $80.00 per hour for attorney time and $25.00 per hour for paralegal time for a total additional fee of $1,450.00 is fair and reasonable. No multiplier is requested.
125. In addition, class counsel is entitled to reimbursement of $159.80 for the costs of the mailing of the checks, by certified mail, *998 to the class members. No reimbursement is sought for anticipated expenses which are not reasonably definite at this time, such as the costs of return telephone calls to class members.

DISCUSSION.
Attorneys who represent a class and create a recovery for that class through trial or settlement are entitled to be compensated for their services from the recovery. Boeing Company v. Van Gemert, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). In determining the amount of such an award, the Court must first compute the so-called "lodestar" fee by (1) determining the total number of hours expended on the case by each attorney, law clerk and paralegal and (2) multiplying those total hours by the normal hourly rate charged by each. Lindy Bros. Builders, Inc. of Philadelphia, Inc. v. American Radiator & Standard Sanitary Corp., 341 F.Supp. 1077 (E.D.Pa.1972), reversed and remanded, 487 F.2d 161 (3d Cir. 1973) (Lindy I), on remand, 382 F.Supp. 999 (E.D.Pa.1974), aff'd in part and rev'd in part, 540 F.2d 102 (3d Cir. 1976) (Lindy II). The Court must thereafter determine whether to increase or decrease the lodestar in light of the contingencies involved and the quality of the work performed. See In Re Anthracite Coal Antitrust Litigation, 81 F.R.D. 499 (M.D.Pa.1979).
Class counsel has expended 795.3 hours of time in the conduct of all of the aspects of this case except the fee petition and the final disbursement of the settlement fund. 673.9 of those hours were expended by partners and by associates. Paralegals employed by class counsel spent 121.4 hours on the case. The hours expended by these individuals on this matter were reasonable and necessary to the conduct of this litigation. Class counsel used associates and paralegals to accomplish work for which an attorney of partner status was not required. See In re Montgomery County Real Estate Antitrust Litigation, 83 F.R.D. 305 (D.Md.1979).
As is reflected in the findings above, the facts giving rise to this and related actions are unusual and complex, Counsel whose petition the Court is now reviewing were substantially, if not wholly, responsible for the creation of a cause of action on behalf of their clients with respect to the funds allocated under the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251, et seq., administered through the Environmental Protection Agency and the Pennsylvania Department of Environmental Resources. Through both an earlier action and contemporaneous actions in other courts, class counsel were able to conduct significant discovery, thereby reducing the discovery required in the instant matter, and to negotiate settlement efficiently and effectively. Considering the novelty of the action, the chances of success at the outset, and the terms and size of the settlement itself, the number of hours expended was reasonably necessary to the creation of the recovery involved.
With respect to the hourly rates charged by each attorney for the class, the Court is of the view that those rates were in accordance with prevailing rates charged by attorneys with similar backgrounds, education, and experience practicing in the locality of the attorneys working for the petitioning firm. A detailed review here of each attorney, the work which she performed, and her hourly rate is not necessary. The rates are set forth in the findings of fact and the Court has reviewed each rate and found it to be reasonable. Further, the rates charged by class counsel are historical in that the rates are those which counsel charged for services on the dates the services were rendered although the rates themselves varied as to each attorney during the period.
The Court has also considered Petitioners' request for payment for the services of paralegals based upon an hourly billing rate for them. As this Court concluded in In re Anthracite Coal Antitrust Litigation, 81 F.R.D. 499 (M.D.Pa.1979), the proper inquiry to be made with respect to whether the services of paraprofessionals should be included in an attorneys' fees award is whether as a matter of normal *999 billing practice such services are charged to clients based upon the number of hours spent by the paraprofessionals in the case multiplied by an hourly fee for their services or whether compensation for such work is included as part of the overhead. If the former is true, the firm's overhead and profit are derived from the fees charged for paraprofessionals as well as attorneys' services, and, because the billing practice with respect to the two are identical, there is no reason to differentiate between them for the purposes of awarding attorneys' fees. It was the testimony of counsel at the hearing held on this matter that paralegals' services are billed usually and regularly to other clients of the firm, and that such practice is common in the area in which the firm is located. Accordingly, the Court believes that the services of the paralegals used in the instant matter should be included in the computation of the lodestar fee.
Having determined the objective basis of the fee award here, the Court must consider whether the basis should be increased to reflect the contingent nature of success of these actions or the quality of work performed or both. With respect to the former factor, the Court may consider the burden borne by the Plaintiffs' counsel in these cases, the legal and factual complexities of the actions, the probability of the Defendants' liability, the risks taken in developing the case, including the hours expended without guarantee of remuneration, the amount, if any, of out-of-pocket expenses advanced by the attorneys, their development of prior expertise in the area and whether there was a delay in receipt of payment by the attorneys. In this case, the Plaintiffs carried an extremely heavy burden of establishing liability. Sovereign and Eleventh Amendment immunity arguments by Defendants as bars to Plaintiffs' recovery were highly significant. In addition, Plaintiffs faced the risk that the class they represent would not be certified by this Court. The action was undertaken without the benefit of any prior government action or adjudication. The petitioning firm risked a large number of hours in this case without the guarantee of remuneration because the cases were taken on a contingent fee basis and, although over 700 hours has been expended by the firm to date, it has yet to receive a fee. The expenditure of such a significant amount of time by a law firm of the size of petitioners' is a substantial burden on such a firm. Moreover, petitioners advanced substantial out-of-pocket expenses. We do not consider the "delay" in payment for the period of April 21, 1980, the date this case was filed, to this day to be of any significance in determining the multiplier.
The other factors outlined above justify an increase in the fee requested. It was counsel's testimony that their work in the related matters of Williamsport Sanitary Authority v. Train, 464 F.Supp. 768 (M.D.Pa.1979) and Commonwealth of Pennsylvania Department of Environmental Resources v. Williamsport Sanitary Authority, 497 F.Supp. 1173 (M.D.Pa.1980) materially reduced the amount of time they found it necessary to expend in this action. Counsel avoided duplication of effort by utilizing discovery already obtained and research already completed, while maintaining the quality of the work produced. Thus, the Court is in agreement with petitioners that because the lodestar fee in this case is not an accurate reflection of the total amount of hours spent on this action the multiplier should be increased.
As the Court of Appeals directed in Lindy I and II, this Court must also consider whether an adjustment of an attorneys' fees award should be made based upon the quality of the work performed. The quality factor generally is represented in the attorney's usual hourly rate, but an additional adjustment may be made taking into account the result obtained by the attorneys, including monetary and non-monetary benefit to the Plaintiffs, and an evaluation of the professional methods utilized by counsel. If such an adjustment is made, the District Court is required to state with specificity the factors upon which it rests its conclusion as well as the amount by which the fee should be altered.
*1000 The Court finds that the work performed by the petitioning firm in this case was of high quality and that an increase of the fee on this basis is permissible. Both in documents and courtroom appearances, class counsel were well-organized, well prepared, and thoroughly acquainted with all of the intricate facets of this litigation. Moreover, the Court recognizes the extraordinary job done by class counsel in negotiating the settlement in this matter which, as the facts above indicate, involved numerous parties with claims pending in several courts. Finally, the settlement achieved by class counsel has produced a substantial monetary benefit for the Plaintiffs. The multiplier of 4.5 requested by Petitioners will be applied to the lodestar fee despite the facts that such a multiplier is extremely high and appears to be probably without precedent. It is warranted only because of the peculiar facts of this case.
Petitioners have also requested reimbursement for certain out-of-pocket expenses which have been itemized in the Court's findings of fact. Those expenses were reasonably necessary for the conduct of this litigation and are reasonable in amount. No party or other person appeared at the evidentiary hearing to contest the fee petition in any respect.

CONCLUSIONS OF LAW.
1. Attorneys who represent a class and create a recovery for that class through trial or settlement are entitled to be compensated for their services from the recovery.
2. The "lodestar" fee requested by McNerney, Page, Vanderlin & Hall, $51,461.00, is justified by the time reasonably expended in the representation of the class and the normal hourly rates of the firm.
3. The 121.4 hours, at $25.00 per hour, for the services of paralegals is included in the "lodestar" since these services are regularly billed to clients of McNerney, Page, Vanderlin & Hall and use of such services is a reasonable and common practice in Williamsport, Pennsylvania.
4. The services performed on behalf of the class and the costs incurred on behalf of the class in the Commonwealth Court and Court of Claims directly benefited the class.
5. In terms of the contingent nature of the work, the following factors justify the increase in the fee by a multiplier:
5.1 The remote chances of success and concurrent substantial risk that there would be no recovery in this action.
5.2 The magnitude, complexity, and novelty of the legal and factual issues involved.
5.3 The absence of any prior governmental or similar action.
5.4 The significant financial risk to McNerney, Page, Vanderlin & Hall in developing this case.
6. In terms of the quality of the work, the following factors justify the increase in the fee by a multiplier:
6.1 The result obtained by McNerney, Page, Vanderlin and Hall for the class was an excellent result.
6.2 The expertise of McNerney, Page, Vanderlin & Hall in the subject matter of this suit which directly benefited the class.
6.3 The achievement of a substantial benefit by McNerney, Page, Vanderlin & Hall with a minimum investment of time.
6.4 The quality of the work submitted to this Court and observed by this Court.
6.5 The professional methods of counsel which substantially expedited the case.
7. A multiplier of 4.5 is properly applicable to the "lodestar" based on the contingent nature of the case and the quality of the work, for a total fee of $231,574.50 for Petitioner McNerney, Page, Vanderlin & Hall.
8. The $3,991.76 expended by McNerney, Page, Vanderlin & Hall were fair and reasonable costs for which the firm is entitled to reimbursement.
*1001 9. McNerney, Page, Vanderlin & Hall is also entitled to compensation of $1,609.80 for the time and expenses reasonably anticipated and required in the disbursement of the settlement sum to the class.
An appropriate order will be entered.

ORDER
Petitioner McNerney, Page, Vanderlin & Hall, is awarded the sum of $233,184.31 as fees and $3,991.75 as costs and expenses for a total award of $237,176.06 in connection with its representation of the Plaintiff class in this matter.

 EXHIBIT "A"
 Year
 Admitted Usual Hrly. Usual Hrly.
 to Rate Pre- Total Rate Post Total
 Attorney/Paralegal Practice 6-1-81 Hours Charges 6-1-81 Hours Charges Charges
 O. William Vanderlin 1950 $70 41.0 $2,870.00 $ 80 10 $ 800.00 $ 3,670.00
 T. Max Hall 1959 $70 1.3 91.00 $100 - - 91.00
 Charles J. McKelvey 1953 $70 2.0 140.00 $ 80 - - 140.00
 E. Eugene Yaw 1973 $70 1.3 91.00 $ 80 51.8 3,626.00 3,717.00
 Ann S. Pepperman 1976 $70 281.5 19,705.00 $ 80 116.3 9,304.00 29,009.00
 Brett O. Feese 1979 $70 166.4 11,648.00 $ 70 2.3 161.00 11,809.00
 _________
 48,426.00
 Barbara Kibbe Paralegal $25 11.7 292.50 $ 25 - - 292.50
 Nicholas Gabriel Paralegal $25 102.11 2,552.75 $ 25 7.59 189.75 2,742.50
 _________
 3,035.00
 GRAND TOTAL $51,461.00
 ==========